**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

MAY - 3 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

GERALD GORDON DAVIS and
SHARON B. HEALY, Individually and )
on Behalf of All Others Similarly Situated )
)
)
)
Plaintiffs )
)
V. )
)
CHESAPEAKE APPALACHIA, LLC, )
NiSOURCE INC., and COLUMBIA )
ENERGY GROUP, )
)
Defendants )

CASE NO. 1:10 CV 23

### CLASS ACTION COMPLAINT

### TRIAL BY JURY REQUESTED

Plaintiffs, Gerald Gordon Davis and Sharon B. Healy, individually and on behalf of all others

similarly situated, state as follows for their Complaint against Defendants, Chesapeake Appalachia,

LLC, NiSource Inc., and Columbia Energy Group:

### I. PARTIES

1.      Plaintiff Gerald Gordon Davis is an adult resident of the State of Virginia, residing

at 225 Oak Hill Lane, Cedar Bluff, Virginia 24609.

2.      Plaintiff Sharon B. Healy is an adult resident of the State of California, residing  at

829 Topper Lane, Lafayette, California 94549.  The predecessors-in-interest of Plaintiff Sharon B.

Healy include her brother, Harold J. Barkley, III, and their mother, Ann Reagan (deceased), and

grandfather, C. H. Reagan (deceased).

3.      Defendant Chesapeake Appalachia, LLC ("Chesapeake Appalachia") is a limited

liability company organized under the laws of the State of Oklahoma and has its principal office at

735 First National Building, 120 North Robinson, Oklahoma City, Oklahoma 73102. The registered

agent for service of process on Chesapeake is CT Corporation System, 4701 Cox Road, Suite 301,

Glen Allen, VA 23060. Chesapeake Appalachia is the successor, by merger or otherwise, to

Columbia Energy Resources, Inc.; Columbia Energy Resources, LLC; Columbia Natural Resources,

Inc.; and Columbia Natural Resources, LLC. Chesapeake Appalachia is liable for all of the acts of

said predecessors complained of herein. Unless referred to separately, Chesapeake Appalachia and

its predecessors are collectively referred to herein as "Chesapeake."

4.      Defendant NiSource Inc. ("NiSource") is a corporation organized under the laws of

the State of Delaware and has its principal office at 801 East 86th Avenue, Merrillville, Indiana

46410. The agent for service of process on NiSource is the Corporate Service Co., 11 South 12th

Street, Richmond, VA 23219.

5.      Defendant Columbia Energy Group ("CEG") is a corporation organized under the

laws of the State of Delaware and is a wholly-owned subsidiary of NiSource, Inc. The agent of

service of process on CEG is Corporate Service Co., 11 South 12th Street, Richmond, VA 23219.

## II. JURISDICTION

6.      Plaintiffs individually and on behalf of the Class, seek to recover damages and

declaratory and/or injunctive relief as a result of Chesapeake's improper calculation and payment

of royalties and overriding royalties as more fully described hereinafter.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332(d) because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and

costs, and because one or more members of the Class are citizens of a State different from the

2

Defendants.

8.     This Court has personal jurisdiction over Defendants pursuant to VSA 8.01-328.1 because Defendants have conducted business in the Commonwealth of Virginia and are registered corporations with the Commonwealth of Virginia.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District, and pursuant to 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction at the time this action is commenced.

## III. DEFINITIONS

10.     The following definitions apply to this Complaint:

a.     "Leases" means all documents under which Chesapeake and any Class Member have both owned interests in oil and gas wells or mineral rights located in the Commonwealth of Virginia, including leases, assignments of leases that convey or reserve overriding royalty interests therein, and other documents conveying or reserving royalty or overriding royalty interests in such wells or mineral rights.

b.     "Gas" means natural gas and/or associated liquid hydrocarbons, but does not include oil, condensate or other liquid hydrocarbons recovered by mechanical separators at or near the wellhead.

c.     "Royalty" means royalty and overriding royalty interests in Gas.

## IV. CLASS ACTION ALLEGATIONS

11.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the Class, defined as follows:

All individuals and entities to whom Chesapeake has paid or currently is paying Royalties under Leases on Gas produced by Chesapeake in the Commonwealth of Virginia, according to the business records maintained by Chesapeake. The Class excludes (a) the Defendants; (b) the federal government; and (c) any person who serves as a judge in this civil action and their spouse.

Plaintiffs reserve the right to redefine the Class and/or establish subclasses as may be appropriate.

12.    The members of the Class ("Class Members") are so numerous that joinder of all members is impractical. Disposition of the claims in this action will provide substantial benefits to both the parties and the Court.

13.    Although the precise number and identity of the Class Members can be ascertained from the books and records of Chesapeake, Plaintiffs allege, upon information and belief, that the Class exceeds 100 members.

14.    There are questions of law and/or fact common to the Class that predominate over any questions affecting individual Class Members. These questions include, but are not limited to, the following:

a.    The methodology and underlying records used by Chesapeake to calculate Royalties due to Plaintiffs, or their predecessors-in-interest, and the Class Members;

b.    The gas prices (per MCF and/or per MMBtu) used by Chesapeake to make its Royalty payments to Plaintiffs, or their predecessors-in-interest, and the Class Members on Gas produced by Chesapeake, and the transactions upon which those gas prices were based;.

c.    Whether the gas prices used by Chesapeake to make its Royalty payments to Plaintiffs, or their predecessors-in-interest, and the Class Members on Gas produced by Chesapeake were less than the market value prices for such Gas as the time of production;

4

d.      The types of post-production costs and other fees, costs, and expenses that were charged, directly or indirectly, by Chesapeake to Plaintiffs, or their predecessors-in-interest, and the Class Members;

e.      Whether the post-production costs and other fees, costs, and expenses charged by Chesapeake to Plaintiffs, or their predecessors-in-interest, and the Class Members are improper as a matter of law and/or fact;

f.      Whether Chesapeake has violated its duty to properly account and pay Royalties to Plaintiffs, or their predecessors-in-interest, and the Class Members on Gas produced in the Commonwealth of Virginia as a result of the acts and omissions described herein;

g.      Chesapeake's policies and practices relating to the preparation of Royalty payment statements (a/k/a "check stubs") sent to Plaintiffs, or their predecessors-in-interest, and the Class Members; and

h.      Whether Chesapeake has breached duties owed to Plaintiffs, or their predecessors-in-interest, and the Class Members by not properly disclosing or itemizing, on Chesapeake's check stubs, all deductions taken from Plaintiffs' and the Class Members' Royalty payments.

15.     The common pattern of conduct by Defendants (along with the common theories for redressing the misconduct) support the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

16.     Plaintiffs are committed to prosecuting this action and have retained experienced and competent counsel. Plaintiffs' counsel are experienced in class actions, including actions involving breaches of oil and gas leases and underpayments of gas royalties. Neither Plaintiffs nor Plaintiffs'

counsel have any interests that might cause them not to vigorously pursue this action.

17.     A well-defined community of interest and common questions of law and fact affect the parties represented and to be represented by this class action.

18.     The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs have the same interests as the other members of the Class.

19.     Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

20.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law.  Because of the size of the individual Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein.  Absent a class action, Defendants will probably continue the improper and wrongful conduct herein described, the Class Members will continue to be damaged by Defendants' wrongful conduct, and Defendants' violations of the law will continue without remedy.

## V. FACTUAL ALLEGATIONS

21.     Plaintiffs, or their predecessors-in-interest, and the Class Members are owed and have received Royalties from Chesapeake under Leases in the Commonwealth of Virginia from which Gas has been produced by Chesapeake.  Chesapeake is responsible for the proper determination, calculation, distribution, and payment of Royalties due and owing to Plaintiffs and the Class Members on Gas produced by Chesapeake.

6

22.     Through the practices, acts and omissions described herein, Chesapeake has failed to pay the true Royalties owed to Plaintiffs, or their predecessors-in-interest, and the Class Members, and Plaintiffs and the Class Members have been and continue to be damaged in an amount to be proven at trial.

A.     **IMPROPER BELOW-MARKET PRICING**

23.     In calculating and making its Royalty payments to Plaintiffs, or their predecessors-in-interest, and the Class Members, Chesapeake has improperly used gas prices that were less than the market value prices for such gas at the time of production. Chesapeake's use of such improper prices resulted from, among other things, the transactions and events described hereinafter.

24.     Prior to November 2000, Columbia Natural Resources, Inc. ("CNR") was a wholly-owned subsidiary of Columbia Energy Resources, Inc. ("CER"), which was itself a wholly-owned subsidiary of Defendant CEG.  Effective November 1, 2000, Defendant NiSource acquired Defendant CEG, at which time CEG became a wholly-owned subsidiary of NiSource and CNR became an indirect subsidiary of NiSource.  On August 23, 2003, CEG sold CER (which owned CNR) to Triana Energy Holdings, LLC ("Triana"), which converted CNR to Columbia Natural Resources, LLC ("CNR, LLC") and converted CER to Columbia Energy Resources, LLC ("CER, LLC").  Triana sold CER, LLC (which owned CNR, LLC) to Chesapeake Energy Corporation on November 14, 2005.  Chesapeake Energy Corporation merged CNR, LLC and CER, LLC into Chesapeake Appalachia, LLC, effective February 1, 2006.

25.     The Defendants implemented various plans and transactions which defrauded Plaintiffs, or their predecessors-in-interest, and the Class Members of the Royalties to which they are entitled under the terms of their Leases, including the plans and transactions described

7

hereinafter.

26.     In April 1999, NiSource made a hostile tender offer to acquire the stock of CEG, which led CEG to approve a series of "golden parachute" compensation plans for its executives totaling $150 million. Typically, golden parachutes are designed to defend against hostile takeover attempts by making the target corporation less attractive to a bidder by adding a large "penalty" payment to the cost of the acquisition. Plaintiffs allege, however, that the CEG golden parachute plans would be paid even if CEG was acquired at the recommendation of its board and officers. That is, CEG's executives would be paid enormous payoffs even if the acquisition attempt turned "friendly."

27.     In December 1999 -- after the implementation of the CEG golden parachute and during the course of NiSource's hostile tender offer for CEG -- CEG directed its subsidiary, CNR, to enter into a "forward sale" contract for the sale of natural gas to be produced in the future. Under the terms of that transaction, CNR received $150 million in cash immediately in exchange for a promise to deliver 40,000 dekatherms per day of natural gas to an entity called "Mahonia II" from February 2000 to January 2004, at a fixed price per unit of gas. The entire $150 million was then appropriated by CEG and used to buy CEG's stock on the open market as part of its defense to NiSource's hostile takeover attempt.

28.     After the Mahonia contract had been entered into, CEG agreed to be acquired by NiSource, and NiSource assumed effective control of CEG. In August 2000, after CEG had agreed to be acquired by NiSource, NiSource and CEG collectively directed CNR to enter into a second Mahonia forward-sale contract for $250 million cash up front in exchange for agreeing to sell gas at a fixed price of $2.82 per Mcf. This $250 million was then appropriated by CEG and NiSource

and was used to fund the golden parachute packages and NiSource's acquisition of CEG.

29.     After the Mahonia transactions -- which bound the Defendants to sell natural gas at a fixed rate for over five years into the future -- had closed, the market price for natural gas rose dramatically, ultimately reaching in excess of $16 per Mcf.  However, Defendants' conduct prevented Plaintiffs, or their predecessors-in-interest, and the Class Members from benefitting from the rise in market value during this period because the Mahonia contracts had capped the price that Defendants would receive for Gas produced from the Plaintiffs' and Class Members' Leases. Defendants -- in contravention of the Leases and duties implied by law, including the duty to market and the duties of good faith and fair dealing -- decided to pay Royalties to Plaintiffs and the Class Members based on the artificially-capped price Defendants received under the Mahonia contracts, and not based on good faith prices reasonably obtainable on the open market at the time Gas was produced from the Plaintiffs' and Class Members' Leases.  Defendants did not notify Plaintiffs and the Class Members of such changes in procedure for selling Gas produced from the Leases and, in fact, fraudulently concealed the changes by regularly mailing royalty payment statements to the Class Members that failed to disclose that Royalty payments were being made based on prices negotiated in 1999 and 2000 rather than on market value prices obtainable in good faith at the time the Gas was produced.

## B.     IMPROPER DEDUCTIONS OF POST-PRODUCTION COSTS

30.     Based on the implied "duty to market," which is part of the Plaintiffs' and Class Members' Leases as a matter of law, Chesapeake is obligated to market the Gas produced from the Leases at no cost to Plaintiffs and the Class Members.  Chesapeake must, among other things, place the Gas in a marketable condition, and transport the Gas to the point of sale; and must bear all of the

costs for same. The Leases do not expressly state that these costs may be deducted from Royalty payments.

31. In violation of the duty to market, Chesapeake has improperly taken deductions from Plaintiffs' (or their predecessors') and Class Members' Royalties for various "post-production" costs. Such costs include fees, expenses, and charges for gathering, compression, dehydration, treating, separation, processing and/or transportation to the point of sale. Such costs also include those volumes of Gas that were used (as fuel) to operate post-production facilities or that were lost or otherwise unaccounted for by the providers of post-production facilities and services. Chesapeake has charged such costs to Plaintiffs, or their predecessors-in-interest, and the Class Members by deducting the post-production costs, directly or indirectly, when calculating Royalty payments and by failing to pay Royalties on the volumes of Gas that were used, lost, or unaccounted for by the providers of post-production facilities and services.

C.   **IMPROPER REPORTING**

32. Chesapeake uses a royalty payment statement (a/k/a "check stub") form that is common to Plaintiffs and the Class Members. The check stubs Chesapeake prepared and sent to Plaintiffs and the Class Members did not disclose all of the deductions or adjustments that Chesapeake had made to Plaintiffs' (or their predecessors') and the Class Members' Royalty payments. For example, and without limitation, Chesapeake has failed to disclose on its check stubs that Chesapeake (improperly) deducted post-production costs in calculating its Royalty payments to Plaintiffs, or their predecessors-in-interest, and the Class Members. Plaintiffs and the Class Members were deceived by Defendants' intentional omissions from the check stubs forwarded to them.

10

33.     The full extent of Defendants' wrongful acts and omissions and the resulting damages suffered by Plaintiffs and the Class Members, are not currently known, and can only be determined adequately through an accounting and investigation of Defendants' books, records, and practices, including, without limitation, disclosure of detailed information relating to the handling and marketing of Gas produced by Chesapeake, the calculation and charging/deduction of post-production costs, the preparation of check stubs, and all other matters relating to Chesapeake's calculation, payment, and/or reporting of its Royalty payments.  Plaintiffs and the Class Members demand and are entitled to receive a full and accurate disclosure of and accounting for all such matters from which the full extent of Defendants' wrongful acts and omissions and Plaintiffs' and the Class Members' resulting damages may be revealed.

**COUNT I**

**<u>BREACH OF CONTRACT</u>**

34.     Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above numbered paragraphs.

35.     The above-described conduct constitutes violations and breaches of the obligations which Defendant owes to Plaintiffs and the Class Members under their Leases.

36.     Plaintiffs and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from the Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

11

## COUNT II

## BREACH OF DUTIES OF MARKETING, GOOD FAITH AND FAIR DEALING

37.    Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs.

38.    At all times material to this Complaint, Defendants owed Plaintiffs and the Class Members certain obligations resulting from implied covenants and duties, including the duty to market and the duties to act in good faith and fairly deal with Plaintiffs and the Class Members.

39.    The above-described conduct constitutes violations and breaches of the implied duty to market and the implied duties of good faith and fair dealing that Defendants owed Plaintiffs and the Class Members.

40.    Plaintiffs and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT III

## CIVIL CONSPIRACY AND JOINT VENTURE

41.    Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above numbered paragraphs.

42.    Until February 28, 2000, CEG directly or indirectly owned, operated and controlled Chesapeake, and Chesapeake was the agent, alter ego, and mere business conduit of CEG for the acts and omissions complained of herein.

43.    On or about February 28, 2000, CEG entered into a plan of merger and/or sale to NiSource wherein NiSource became the direct or indirect owner of CEG and Chesapeake.  At all

12

times alleged after February 28, 2000, CEG and Chesapeake were controlled by NiSource and were the agents, alter ego, and mere business conduits of NiSource for the acts and omissions complained of herein.

44.    At all relevant times complained of herein, CEG and NiSource combined and conspired with each other, with Chesapeake, and with others to cause Plaintiffs, or their predecessors-in-interest, and the Class Members to not be paid the full amount of Royalties due them under their Leases, and Defendants are liable to Plaintiffs and the Class Members for civil conspiracy.

45    At all relevant times complained of herein, CEG and NiSource were involved in one or more joint ventures with Chesapeake and others, and are liable to Plaintiffs and the Class Members as joint venturers for the acts and omissions complained of herein.

46.    NiSource and/or CEG directed and required Chesapeake to enter into agreements for the sale of natural gas produced from its wells at a price which caused Plaintiffs, or their predecessors-in-interest, and the Class Members to not receive Royalty payments based on market value prices as called for in their Leases. NiSource and/or CEG thereby intentionally and wrongfully interfered with Plaintiffs' and Class Members' contracts (Leases), and NiSource and CEG are liable to Plaintiffs and the Class Members for the resulting damages sustained by Plaintiffs and the Class Members.

47.    In August 2003 and thereafter, NiSource and CEG acknowledged their responsibility to pay for all or part of any judgement arising from claims of the typed asserted herein even though they had directly or indirectly sold Chesapeake. Further, in August 2003, NiSource and CEG entered into an agreement which required Chesapeake and Triana (which directly or indirectly owned,

13

operated or controlled Chesapeake after August 2003) to continue to perform the below-market gas sales agreements. Chesapeake performed the gas sales agreements and Chesapeake, therefore, was the agent of NiSource and CEG in the performance of NiSource's and CEG's duties and obligations under said agreements.

48.     At all times complained of herein, Defendants acted as conspirators and/or joint venturers with each other and with unknown persons, firms and corporations in common goals, schemes and designs and for the improper goals and purposes herein alleged.

49.     Plaintiffs and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from the Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT IV

## INDEMNIFICATION AND ASSUMPTION OF LIABILITY

50.     Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above numbered paragraphs.

51.     NiSource and CEG have agreed to indemnify Chesapeake for liability or loss arising from claims of the type asserted herein.

52.     NiSource and CEG will be liable for all or part of the judgment which Plaintiffs and the Class Members may be awarded in this case by virtue of their own wrongful acts and omissions and/or by virtue of their contractual obligations to Chesapeake.

53.     Plaintiffs and the Class Members are third party beneficiaries under the contract among NiSource and CEG and others wherein NiSource and CEG agreed to pay all or part of any judgment Plaintiffs and the Class Members may obtain against Defendants, or any of them, in this

14

case.

## COUNT V

## **PUNITIVE DAMAGES**

54.    Plaintiffs restate and incorporate herein by reference all of the allegations contained in the above numbered paragraphs.

55.    The actions of Defendants as set forth hereinabove were willful and wanton and in utter disregard of the rights of Plaintiffs and the Class Members, or were done with reckless disregard for their rights, thus entitling Plaintiffs and the Class Members to punitive damages in an amount to be determined by the jury.

WHEREFORE, Plaintiffs respectfully demand as follows on behalf of themselves and the Class:

1.    That a class be certified by the Court as soon as practicable, and that this action proceed as a class action with Plaintiffs serving as Class Representatives for the Class and with counsel for Plaintiffs serving as Class Counsel.

2.    That Plaintiffs and members of the Class recover full compensatory damages against Defendants, jointly and severally.

3.    That Plaintiffs and members of the Class recover punitive damages against Defendants, jointly and severally, as determined by a jury.

4.    Pre-judgment and post-judgment interest on all amounts awarded hereunder.

5.    Reasonable attorneys' fees and costs of this action.

6.    All additional relief as may be just and proper and to which the Plaintiffs and members of the Class may be entitled.

15

7.    Trial by jury.

Respectfully submitted,

GERALD GORDON DAVIS
and SHARON B. HEALY

BY:

Thomas L. Pruitt
Pruitt & Childress, PC
1080 Walnut Street
P. O. Box 1259
Grundy, Virginia 24614
Telephone No.  (276) 935-7900
Fax No. (276) 935-7905
Email: tlpruitt@pnc-law.com

Larry D. Moffett
Daniel Coker Horton & Bell, P.A.
265 North Lamar Blvd., Suite R
P.O. Box 1396
Oxford, MS  38655
Telephone No.: (662) 232-8979
Fax No.: (662) 232-8940
lmoffett@danielcoker.com

David Stellings
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street Eighth Floor
New York, NY 10013
Telephone No.: (212) 355-9500
Fax No.: (212) 355-9592
dstellings@lchb.com

Charles Barrett
Barrett & Associates, P.A.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
Telephone No.: (615) 515-3393
Fax No.:  (615) 515-3395 (fax)
cb@barrettandassociates.net

Don Barrett
Katherine Barrett Riley
Barrett Law Office, P.A.
404 Court Square North
P.O. Drawer 987
Lexington, MS  39095
Telephone No.: (662) 834-2376
Fax No.: (662) 834-2628
dbarrett@barrettlawoffice.com

Mary E. McAlister
P.O. Box 354
Madison, Mississippi  39130
Telephone No.: (601) 506-9125
mcalister_m@bellsouth.net