**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| SHARON B. HEALY, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-23 |
| v. | ) ) | |
| CHESAPEAKE APPALACHIA, LLC, NiSOURCE INC., and COLUMBIA ENERGY GROUP, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

897166.2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND FACTUAL BACKGROUND ..................................................... 1

II.  STANDARD OF REVIEW ................................................................................................. 5

III.  PLAINTIFF'S DECLARATORY JUDGMENT CLAIM (COUNT I) IS
PROPERLY ASSERTED, IS ESSENTIAL TO AVOID MAJOR
INEFFICIENCIES, AND SHOULD NOT BE DISMISSED. ........................................... 5

IV.  THE STATUTE OF LIMITATIONS HAS NOT YET BEGUN TO RUN ON
PLAINTIFF'S BREACH OF CONTRACT CLAIMS. ................................................... 10

A. Defendants' Fraudulent Concealment Of Their Conduct Has Tolled The
Statute Of Limitations. ............................................................................................ 11

B. The Statute Of Limitations Is Tolled By Virginia's "Continuing Duty" Rule. ......... 13

C. Alternatively, Each Underpayment Constitutes A New Injury, Re-Setting The
Statute Of Limitations. ............................................................................................ 14

V.  PLAINTIFF'S OTHER CLAIMS ARE NOT BARRED BY THE STATUTES OF
LIMITATIONS. ................................................................................................................ 16

VI.  PLAINTIFF'S CLAIMS ARE PROPERLY PLED AND PROPERLY ASSERTED
INDEPENDENT OF AND IN ADDITION TO THE BREACH OF CONTRACT
CLAIM. .............................................................................................................................. 17

A. Plaintiff Has More Than Sufficiently Alleged A Breach Of Contract
(Count VIII). ............................................................................................................ 17

B. Plaintiff's Claims For Breach Of Continuing Duties (Count II) And Breach Of
Duties Of Marketing, Prudent Operator, Good Faith And Fair Dealing
(Count VII) Should Not Be Dismissed. .................................................................... 19

1.  Breach Of Continuing Duties, Obligations And Services ....................... 20

2.  Breach Of Duties Of Marketing, Prudent Operator, Good Faith
And Fair Dealing. ...................................................................................... 21

C. Plaintiff's Breach Of Fiduciary Duty Claim (Count XI) Is Properly Pled. .............. 23

D. Plaintiff's Claim For Negligence (Count XIII) Is Properly Pled. ............................. 26

E. Plaintiff's Conversion Claim (Count XII) Is Properly Pled. ..................................... 27

F. Plaintiff's Claim For Unjust Enrichment (Count V) Is Properly Asserted And
Pled. ......................................................................................................................... 28

G. Plaintiff's Claims For Common Law Fraud And Fraudulent Concealment
(Count IV) Are Pled With Sufficient Particularity And Should Not Be
Dismissed. ................................................................................................................ 30

**TABLE OF CONTENTS**
**(continued)**

Page

H.  Plaintiff's Claim For Indemnification And Assumption Of Liability (Count IX) Is Properly Asserted And Pled. ........................................................ 32

I.  Plaintiff's Civil Conspiracy, Joint Venture, And/Or Alter Ego Claims (Count X) Are Properly Asserted And Pled. ...................................................... 33

    1.  The "Intracorporate Conspiracy Doctrine" Is Inapplicable. .................... 33

    2.  Plaintiff Has Pled Underlying Wrongdoing............................................. 34

J.  Plaintiff's Claims For An Accounting (Count III), A Constructive Or Implied Trust (Count VI), And The Recovery Of Prejudgment Interest As Compensatory Damages (Count XIV) Are Properly Asserted And Pled. ........... 35

VII.  DEFENDANTS' RELIANCE ON ARBITRATION CLAUSES FOUND NOWHERE IN THE AMENDED COMPLAINT IS SPECULATIVE AND SHOULD BE DISREGARDED. .................................................................... 36

VIII.  CONCLUSION............................................................................................... 36

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allaun v. Scott,*
  59 Va. Cir. 461 (2002) ................................................................... 24

*Allen Realty Corp. v. Holbert,*
  227 Va. 441, 318 S.E.2d 592 (Va. 1984) ................................. 26, 29

*Allen v. McCurry,*
  449 U.S. 90, 101 S.Ct. 411 (1980) ............................................... 7

*Am Phys. Therapy Ass'n v. Fed'n of State Bds. of Phys. Therapy,*
  271 Va. 481, 628 S.E.2d 928 (Va. 2006) ..................................... 16

*Amoco Prod. Co. v. Alexander,*
  622 S.W.2d 563 (Tx. 1981) .......................................................... 23

*Armstrong Petroleum v. Tri-Valley Oil & Gas,*
  116 Cal. App. 4th 1375 (Cal. 2004) ............................................. 18

*Ashco Int'l, Inc. v. Westmore Shopping Ctr. Assoc.,*
  1997 WL 1070624 (Va. Cir. Ct. Jun. 19, 1997) .......................... 33

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009) ................................................................... 5

*Atl. Credit & Fin. Special Fin. Unit, LLC v. MBNA Am. Bank, N.A.,*
  2001 U.S. Dist. LEXIS 10957 (W.D.Va. June 4, 2001) .............. 33

*Atlantic Richfield v. Farm Credit Bank,*
  226 F.3d 1138 (10th Cir. 2000) ................................................... 26

*Augusta Mutual Ins. Co. v. Mason,*
  645 S.E.2d 290 (Va. 2007) ........................................................... 27

*Barry v. Donnelly,*
  781 F.2d 1040 (4th Cir. 1986) ..................................................... 13

*Bates v. Union Oil Co.,*
  944 F.2d 647 (9th Cir. 1991),
  *certiorari denied* 112 S.Ct. 1761,
  503 U.S. 1005, 118 L.Ed.2d 424 ................................................. 9

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................. 5, 20

*Beson, Inc. v. Coca-Cola Company, et al.,*
  2009 U.S. App. LEXIS 15409 (3rd Cir. Jul. 13, 2009) ............... 18

*Boone v. C. Arthur Weaver Co., Inc.,*
  365 S.E.2d 764 (Va. 1988) ..................................................... 15, 19

*Bright v. QSP, Inc.,*
  20 F.3d 1300 (4th Cir. 1994) ....................................................... 33

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Buchanan County, Virginia v. Blankenship*,
496 F. Supp. 2d 715 (W.D. Va. 2007) ................................................. 6

*Cafritz v. Corp. Audit Co.*,
1945 U.S. Dist. LEXIS 2251 (D.D.C. May 14, 1945) ........................... 29

*Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*,
251 Va. 28, 466 S.E.2d 382 (1996) ................................................ 24, 25

*Chemetron Corp. v. Business Funds, Inc.*,
682 F.2d 1149 (5th Cir. 1982),
*rehearing denied* 689 F.2d 190,
*judgment vacated on other grounds*, 103 S.Ct. 1245,
460 U.S. 1007, 75 L.Ed.2d 476 (1983) ............................................... 9

*Cincinnati Ins. Co. v. Cost. Co.*,
2010 U.S. Dist. LEXIS 46387 (N.D. W.Va. 2010) ............................ 22

*Citizens for Fauquier County v. SPR Corp.*,
37 Va. Cir. 44 (1995) ....................................................................... 37

*City of Richmond v. Madison Mgmt. Group, Inc.*,
918 F.2d 438 (4th Cir. 1990) ........................................................... 35

*Clark v. Slick Oil Co.*,
88 Oka. 55, 211 P. 496 (Okla. 1922) ............................................... 31

*Clarke v. Newell*,
2005 U.S. Dist. LEXIS 31053 (E.D. Va. Nov. 23, 2005) ................... 40

*Clemens v. Home Savers, LLC*,
2007 U.S. Dist. LEXIS 70410 (E.D. Va. Sept. 21, 2007) ................... 27

*Conley v. Spillers*,
171 W.Va. 584, 301 S.E.2d 216 (W.Va. 1983) ................................ 7, 8

*Connelly v. General Motors Corp.*,
880 F. Supp. 1100 (E.D. Va. 1995) ................................................. 26

*Coosewood v. Meridian Oil Co.*,
25 F.3d 920 (10th Cir. 1994) ........................................................... 28

*Corinthian Mortgage Corp. v. ChoicePoint Precision Marketing, LLC*,
2008 U.S. Dist. LEXIS 53573 (E.D. Va. Jul. 14, 2008) ................ 17, 19

*Crestar Bank v. Williams*,
250 Va. 198, 462 S.E.2d 333 (Va. 1995) .......................................... 40

*Enomoto v. Space Adventures, Ltd.*,
624 F. Supp. 2d 443 (E.D. Va. 2009) ............................................... 25

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .......................................................................... 33

## TABLE OF AUTHORITIES
### (continued)

Page

*Estate of Garrison G. Tawney v. Columbia Natural Resources, LLC, et al.*,
No. 03-C-10E, Circuit Court of Roane County, West Virginia (filed Feb. 3,
2003 and tried in January 2007) .................................................................................. 1

*Executive Risk Indem., Inc. v. Charleston Area Medical Center, Inc.*,
681 F. Supp. 2d 694 (S.D. W.Va. 2009) ................................................................... 11

*F.D.I.C. v. Cocke*,
7 F.3d 396 (4th Cir. 1993) ......................................................................................... 13

*Facility Wizard Software, Inc. v. Southeastern Technical Svcs., Inc.*,
647 F. Supp. 2d 938 (N.D. Ill. 2009) ....................................................................... 20

*Farley v. Goode*,
219 Va. 969, 252 S.E.2d 594 (1979) ......................................................................... 16

*Filak v. George*,
267 Va. 612 (Va. 2004) ............................................................................................. 31

*Firestone v. Wiley*,
485 F. Supp. 2d 694 (E.D. Va. 2007) ....................................................................... 37

*Forest v. Kentucky-Ohio Gas Acquisition Corp.*,
1999 WL 33117234 (Va. Cir. Ct. Nov. 23, 1999) .................................................... 29

*Fox v. Deese*,
234 Va. 412 (Va. 1987) ............................................................................................. 33

*Garman v. Conoco, Inc.*,
886 P.2d 652 (Colo. 1994) ........................................................................................ 23

Gilmore v. Superior Oil Co.,
192 Kan 388, 388 P.2d 602 (Kan. 1964) ............................................................ 23, 29

*Grant v. Adventist Health System Sunbelt Health Care Corp.*,
2009 U.S. Dist. LEXIS 109524 (W.D.N.C. Jul. 28, 2009) ...................................... 22

*Greenspan v. Osheroff*,
232 Va. 388, 351 S.E.2d 28 (Va. 1986) .................................................................... 40

*Grimes v. Suzukawa*,
262 Va. 330 (Va. 2001) ............................................................................................. 13

*Gurley v. Lindsley*,
459 F.2d 268 (5th Cir. 1972) ..................................................................................... 28

*Hampton Roads Sanitation Dist. v. McDonnell*,
234 Va. 235, 360 S.E.2d 841 (Va. 1987) ...................................................... 16, 17, 19

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) .............................................................................. 34, 35

*Hartley v. Mentor Corp.*,
869 F.2d 1469 (Fed. Cir. 1989) ............................................................................... 8, 9

# TABLE OF AUTHORITIES
## (continued)

Page

*H-B Ltd. Partnership v. Wimmer*,
220 Va. 176, 257 S.E.2d 770 (Va. 1979) ........................................... 26

*Hitachi Credit America Corp. v. Signet Bank*,
166 F.3d 614 (4th Cir. 1999) ........................................... 40

*Hondo Oil & Gas Company v. Texas Crude Operators*,
970 F.2d 1433 (5th Cir. 1992) ........................................... 18

*Hunter v. Custom Business Graphics*,
635 F. Supp. 2d 420 (E.D. Va. 2009) ........................................... 17

*In re: Microsoft Corp. Antitrust Litig.*,
355 F.3d 322 (4th Cir. 2004) ........................................... 8

*J.C. Hill v. Marathon Oil Co.*,
2010 WL 2365477 (W.D. Okla. Jun. 9, 2010) ........................................... 26

*Jappell v. Am. Ass'n of Blood Banks*,
162 F. Supp. 2d 476 (E.D. Va. 2001) ........................................... 29

*John Morrell & Co. v. Local Union 304A of United Food and Commercial
Workers*,
913 F.2d 544 (8th Cir. 1990) ........................................... 10, 11

*John Thacker, et al. v. Chesapeake Appalachia, LLC, et al.*,
No. 7:07-cv-00026 (E.D. Ky. filed Feb. 6, 2007);
695 F. Supp. 2d 521 (E.D. Ky. 2010) ........................................... 1, 37

*Johnson v. D&D Home Loans Corp.*,
2007 U.S. Dist. LEXIS 90140 (E.D. Va. Dec. 6, 2007) ........................................... 41

*Jones v. Link*,
493 F. Supp. 2d 765 (E.D. Va. 2007) ........................................... 32

*Keller v. Denny*,
232 Va. 512, 352 S.E.2d 327 (Va. 1987) ........................................... 15

*Khair v. Countrywide Home Loans, Inc.*,
2010 U.S. Dist. LEXIS 58922 (E.D.Va. Jun. 14, 2010) ........................................... 21, 22

*La Barte v. Seneca Resources Corp.*,
285 A.D.2d 974, 728 N.Y.S.2d 618 (N.Y. 1st Dep't 2001) ........................................... 28

*Lo v. Burke*,
249 Va. 311, 455 S.E.2d 9 (Va. 1995) ........................................... 12

*Lummus Co. v. Commonwealth Oil Refining Co.*,
297 F.2d 80 (2d Cir. 1961) ........................................... 11

*Lutz v. Chesapeake Appalachia, LLC*,
2010 U.S. Dist. LEXIS 60429 (N.D. Ohio Jun. 18, 2010) ........................................... 11

*Mar Tech Mechanical, Ltd. v. Chianelli Bldg. Corp.*,
54 Va. Cir. 569, 2001 WL 1262387 (Va. Cir. Ct. Mar. 6, 2001) ........................................... 34

**TABLE OF AUTHORITIES**
(continued)

Page

*McClung v. Smith*,
870 F. Supp. 1384 (E.D. Va. 1994) ................................................................ 40

*McCormick v. Romans & Gunn*,
214 Va. 144, 198 S.E.2d 651 (Va. 1973) ........................................................ 16

*Migra v. Warren City Sch. Dist. Bd. Of Educ.*,
465 U.S. 75 (1984) ........................................................................................... 7

*Montana v. United States*,
440 U.S. 147, 99 S.Ct. 970,
59 L.Ed.2d 210 (1979) ...................................................................................... 6

*Neitzke v. Williams*,
490 U.S. 319 (1989) .......................................................................................... 5

*Newman v. Walker*,
270 Va. 291 (Va. 2005) ................................................................................... 13

*NiSource, Inc. v. Estate of Tawney v. Goff*,
129 S.Ct. 1186 (2008) ..................................................................................... 10

*Norfolk & W. Ry. Co. v. Allen*,
118 Va. 428, 87 S.E. 558 (Va. 1915) .............................................................. 19

*Objective Interface Systems v. Garrett*,
2006 U.S. Dist. LEXIS 79722 (E.D. Va. Oct. 27, 2006) ................................ 13

*Omega World Travel v. TWA*,
111 F.3d 14 (4th Cir. 1997) ............................................................................ 25

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) .......................................................................................... 6

*Pepper v. Dixie-Splint Coal Co.*,
165 Va. 179, 181 S.E. 406 (Va. 1935) ............................................................ 40

*Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*,
256 Va. 553 (Va. 1998) ................................................................................... 36

*Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*,
686 F.2d 720 (9th Cir. 1982) ............................................................................ 9

*Roark v. Hicks*,
234 Va. 470, 362 S.E.2d 711 (Va. 1987) ............................................. 28, 29, 38

*Roberts Ranch Co. v. Exxon Corp.*,
43 F. Supp. 2d 1252 (W.D. Okla. 1997) .......................................................... 26

*Rogers v. Westerman Farm Co.*,
29 P.3d 887 (Colo. 2001) ................................................................................ 29

*Rupe v. Triton Oil & Gas Corp.*,
806 F. Supp. 1495 (D. Kan. 1992) .................................................................. 18

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Seeco v. Hales,*
341 Ark. 673 (Ark. 2000) ....................................................................... 27

*Simmons v. Miller,*
261 Va. 561, 544 S.E.2d 666 (Va. 2001) ................................................ 31

*Skillstorm, Inc. v. Elec. Data Sys., LLC,*
666 F. Supp. 2d 610 (E.D. Va. 2009) ..................................................... 25

*Smith v. Amoco Prod. Co.,*
272 Ks. 58, 31 P.3d 255 (Kan. 2001) ..................................................... 23

*Southwest Gas Producing Co. v. Seale,*
191 So.2d 115 (Miss. 1966) .................................................................... 23

*State Farm Mut. Auto Ins. Co. v. Floyd,*
235 Va. 136 (Va. 1988) ........................................................................... 27

*State v. Miller,*
194 W.Va. 3, 459 S.E.2d 114 (W.Va. 1995) ............................................ 7

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,*
71 F.3d 119 (4th Cir. 1995) .................................................................... 12

*Tawney v. Columbia Natural Resources, LLC,*
2007 WL 5539870 (W.Va. Cir. Ct. Jun. 27, 2007) ....................... passim

*Tawney v. Columbia Natural Resources, LLC,*
219 W. Va. 266, 633 S.E.2d 22 (W.Va. 2006) ...................................... 10

*Temple v. Millers Cove Energy Company, Inc.,*
2000 U.S. App. LEXIS 10924 (6th Cir. May 9, 2000) .......................... 18

*Tidewater Beverage Svcs. v. Coca Cola Co.,*
907 F. Supp. 943 (E.D. Va. 1995) .................................................... 30, 31

*Torkie-Tork v. Wyeth,*
2010 WL 2505566 (E.D. Va. Jun. 16, 2010) ......................................... 12

*United Leasing Corp. v. Resource Bank,*
58 Va. Cir. 96 (Va. Cir. Ct. 2001) .......................................................... 24

*Virginia Elec. & Power Co. v. Broe Growth Capital LLC,*
2007 WL 2071726 (E.D. Va. Jul. 17, 2007) .......................................... 32

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.,*
156 F.3d 535 (4th Cir. 1998) .................................................................. 24

*Ward's Equip. v. New Holland of N. Am.,*
254 Va. 379 (Va. 1997) ........................................................................... 25

*Wilson v. Miller,*
104 Va.. 446, 51 S.E. 837 (Va. 1905) .................................................... 16

*Wright v. Everett,*
197 Va. 608, 90 S.E.2d 855 (Va. 1956) ................................................. 27

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Wright v. St. Charles Water Auth.*,
    59 Va. Cir. 244 (Va. Cir. Ct. 2002) ................................................................. 24

## STATUTES

28 U.S.C. § 1738 ............................................................................................... 7

Va. Code § 8.01-229(D) ................................................................................... 12

Va. Code § 8.01-230 ......................................................................................... 12

Va. Code § 8.01-281 .................................................................................... 33, 34

Va. Code § 8.01-382 ......................................................................................... 40

Va. Code. § 8.01-31 .......................................................................................... 40

## TREATISES

5 Wright & Miller, Fed. Prac. & Proc. § 1283 (3d Ed.) ............................... 33

Restatement (Second) of Contracts, § 308, *Identification of Beneficiaries* ............................... 37

Restatement (Second) of Judgments § 13 comment g (1982) ..................... 10

## I.  __INTRODUCTION AND FACTUAL BACKGROUND__

Plaintiff alleges that Defendants Chesapeake Appalachia, LLC; NiSource Inc.; and Columbia Energy Group ("Defendants") systematically and intentionally underpaid gas royalties to royalty owners who had entered into gas leases with Defendants.  This case is not the first opportunity that Defendants have had to defend themselves against these claims – in fact, it is the third.  In 2007, after nearly four years of class action litigation and a trial that involved facts identical to those before the Court in this case, a West Virginia jury returned a $134 million compensatory damages verdict against these Defendants, plus a $270 million punitive damages award.  The judge who presided over the trial in that case upheld both the compensatory and punitive damage awards, and the West Virginia Supreme Court denied appeal after review of Defendants' 75-page petition for appeal.  *See Estate of Garrison G. Tawney v. Columbia Natural Resources, LLC, et al.*, No. 03-C-10E, Circuit Court of Roane County, West Virginia (filed Feb. 3, 2003 and tried in January 2007) ("*Tawney*").

Similarly, earlier this year Defendants paid the plaintiffs and class members in a Kentucky class action almost $29 million to resolve claims based on the same facts as those alleged in *Tawney*  and in this case.  *See John Thacker, et al. v. Chesapeake Appalachia, LLC, et al.*, No. 7:07-cv-00026 (E.D. Ky. filed Feb. 6, 2007); 695 F. Supp. 2d 521 (E.D. Ky. 2010) (opinion granting final approval of settlement) ("*Thacker*").

The same Defendants whose royalty underpayment malfeasance forced them to pay West Virginia and Kentucky gas royalty owners more than $400 million now have the temerity to argue that Plaintiff's claims in this case should be dismissed, even though the claims alleged in Plaintiff's detailed Amended Complaint are virtually identical to those alleged in both *Tawney* and *Thacker*, except here they seek to protect Virginia gas royalty owners.  According to Defendants, while gas royalty owners in West Virginia and Kentucky have been compensated for

Defendants' intentional royalty underpayments, Virginia gas royalty owners should get nothing, even though Defendants intentionally treated them just as callously. Not only would such a result be manifestly unjust, but Defendants' position also flies in the face of the facts alleged in Plaintiff's Amended Complaint, and it is contrary to Virginia law.

Defendants' motion is based on a fundamental misreading of the Amended Complaint. They mischaracterize the case as exclusively a breach of contract case, and ignore a host of misconduct allegations that give rise to independent torts irrespective of the leases. Defendants also ignore well-established Virginia law that allows Plaintiff to plead alternative theories of liability.

Defendants seek to wish away years of failed litigation in two cases that arose out of the same set of facts as those in this case. Defendants argue that they have inadequate notice of the claims being brought against them, which is nonsense because the claims here are based on the same facts that the same Defendants litigated for years in West Virginia and Kentucky. Defendants also ignore – and ask the Court to ignore – Plaintiff's well-pleaded facts, contrary to the standards that govern motions to dismiss.

Plaintiff's Amended Complaint exhaustively details the ways in which Defendants acted not only in breach and violation of the leases, but also in violation of the duties imposed on them as a matter of law, in their calculation and disclosure of the royalties owed to Plaintiff and the Class. As the Amended Complaint explains, Defendants are obligated to market the gas produced under the leases at no cost to Plaintiff and the Class. (Am. Compl. ¶ 28.) Defendants, however, imposed on Plaintiffs the costs involved in making the gas marketable (¶ 29), sold the gas in unmarketable condition at below-market prices, and then based the royalties paid to Plaintiff on artificially low prices. (¶ 30.) Defendants also negligently maintained their

897166.2

gathering lines, which imposed excessive and undisclosed costs on Plaintiff and the Class (¶ 58), and improperly measured the gas produced, again to the detriment of the royalty owners.  (¶ 60.)

As alleged in the Amended Complaint, Defendants undertook to provide a regular accounting to Plaintiff and the Class of material information concerning production and the calculation of royalties, but these statements were rife with misstatements and misrepresentations of key information, and they deliberately omitted other material information.  The statements purportedly listed deductions taken, the total amount of gas produced, and the true rate (in dollars) for which the gas was sold.  (¶¶ 44-46.)  But the statements misrepresented the volumes of gas produced (¶ 60), they reported "0.00" deductions when significant sums were deducted, and the statements listed a false "rate" that was not based on the market rate or the highest rate reasonably obtainable.  (¶¶ 44-46; ¶ 56.)  Also, the statements failed to list post-wellhead costs (¶¶ 47-50) and line losses (¶¶ 58-59).

Most egregiously, as the Amended Complaint explains, many of the underpayments to Plaintiff and the Class Members resulted from two forward sales contracts that Defendants' executives designed to fund a lavish "golden parachute" compensation plan for themselves in connection with a merger.  These forward sales contracts, pursuant to which CEG, through a subsidiary, was to deliver gas to an entity known as "Mahonia II," set an artificially low fixed price for the gas for which Plaintiff and the Class were entitled to royalties.  (*See* ¶¶ 33-38, 40, 51.)  The rates set by the Mahonia II contracts were substantially below fair market price, and they resulted in substantial underpayments to Plaintiff and the Class Members.  (¶ 51.) Plaintiff and the Class Members were not parties to these contracts and received no notice of them, either at the time they were entered into or in the fraudulent accounting statements subsequently sent to them.  (¶¶ 53, 56-57.)

-3-

Without *Tawney* and *Thacker*, Defendants' actions may never have come to light. The *Tawney* case involved the same allegations Plaintiff makes in this case against the same defendants for, among other things, Defendants' improper deductions and measurements and fraudulent representations regarding each of these, as well as for improperly basing royalties on the "Mahonia II" contracts. Despite Defendants' best efforts, the *Tawney* case reached a jury, which found these defendants liable for fraud and other claims. The judge overseeing the *Tawney* litigation issued a meticulously detailed opinion upholding the punitive damages award. *See Tawney v. Columbia Natural Resources, LLC*, 2007 WL 5539870 (W.Va. Cir. Ct. Jun. 27, 2007) (attached hereto as Exhibit A to the accompanying Declaration of David S. Stellings ("Stellings Decl.").) The case subsequently settled for $380 million. (*See Tawney* Settlement Agreement (available for download at http://cnrsettlement.com/docs.htm), at 9, and attached hereto as Exhibit B to the Stellings Decl.)

In upholding the punitive damages award, the *Tawney* court emphasized that the conduct at issue in *Tawney* made it more than a breach of contract case. "Fraud," the Court wrote, "is an independent tort that amounts to misconduct far more egregious than simple breach of contract." *Tawney*, 2007 WL 5539870, at *6. Because the jury found fraud "in relation to the underpayment of royalties due," punitive damages were appropriate. *Id.* Here, too, where Plaintiff and the Class allege the same defendants committed the same misconduct and fraud alleged in *Tawney*, there is more than a breach of contract at issue.

Plaintiff has more than sufficiently pled not only breaches of the leases at issue, but also the breach of independent duties by Defendants, including a fiduciary duty Defendants owed to Plaintiff and the Class Members. The Court should deny Defendants' motion to dismiss.

## II.   STANDARD OF REVIEW

The court must take the allegations in the complaint as true when ruling on a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A complaint is adequate if it alleges sufficient facts to show that "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The analysis is "context-specific," and courts are advised to draw upon "judicial experience and common sense" in determining whether a complaint satisfies the plausibility standard. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). However, assessing plausibility does not involve analysis of the merits. *Id.* at 556-57 (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.")).

## III.   PLAINTIFF'S DECLARATORY JUDGMENT CLAIM (COUNT I) IS PROPERLY ASSERTED, IS ESSENTIAL TO AVOID MAJOR INEFFICIENCIES, AND SHOULD NOT BE DISMISSED.

Because several identical issues and facts were fully litigated in the *Tawney* case against these same defendants, Plaintiff here seeks, in her first Count, a declaratory judgment from this Court that Defendants are barred from re-litigating these same issues that they had a full and fair opportunity to litigate previously. As this Court has stated, "The application of collateral estoppel precludes the relitigation of any issues 'actually litigated and necessary to the outcome of the first action." *Buchanan County, Virginia v. Blankenship*, 496 F. Supp. 2d 715, 719 (W.D. Va. 2007) (applying the doctrine in a civil RICO action and citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n.5 (1979)). The Supreme Court has described the virtues of the doctrine this way: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147,

153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210, 217 (1979).  Those purposes are served here.

As a threshold matter, Defendants argue that Virginia law precludes Plaintiff, who was not a party to the *Tawney* action, from invoking the doctrine of collateral estoppel here because Plaintiff was not a party (or in privity to a party) in the *Tawney* action, and Virginia requires mutuality.  Defendants are incorrect.  West Virginia's preclusion rules, not Virginia's, apply to a West Virginia state court judgment.  As the Supreme Court has stated, "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984).  This rule is based on the full faith and credit statute, 28 U.S.C. § 1738, providing that the judicial proceedings of any state court shall have full faith and credit in every court within the United States.  *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415 (1980) ("though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.").  The *Tawney* judgment was rendered by a West Virginia state court.  West Virginia follows *Parklane Hosiery* in *not* requiring mutuality – that the parties to both actions be identical – in the use of collateral estoppel.  *See Conley v. Spillers*, 171 W.Va. 584, 592, 301 S.E.2d 216, 224 (W.Va. 1983).  The application of the doctrine rests within the discretion of the trial court.  *Id.*

The factors developed under West Virginia law mirror those developed under federal law and within the Fourth Circuit as to when parties should be precluded from re-litigating previously decided issues.  Those factors are:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State v. Miller*, 194 W.Va. 3, 9, 459 S.E.2d 114, 120 (W.Va. 1995); *compare, e.g., In re: Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).  The West Virginia Supreme Court has emphasized that the "fundamental point relating to the utilization of collateral estoppel which is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim."  *Conley*, 171 W. Va. at 594.

This presents a textbook case for the application of issue estoppel.  It would be highly inefficient for the parties to re-litigate issues that were conclusively decided by the *Tawney* and *Thacker* cases.  The *Tawney* court developed a detailed record, for example, of the corporate structure of the three defendants, which the Amended Complaint incorporates.  (*See, e.g.*, ¶ 40.)  Plaintiff only seeks, as Count I states, to bar re-litigation of issues that were identical to those already litigated in and necessary to the disposition of *Tawney*.  For example, the fact of certain deductions and the non-disclosure of those deductions to royalty owners, the fact of the Mahonia II contracts and their non-disclosure to royalty owners, and several other central questions here, are matters of fact that should not be re-litigated here.  The doctrine of collateral estoppel is designed to avoid just such inefficiencies.

Defendants apparently deny that two of the relevant criteria have been met to apply collateral estoppel here: first, they deny that there was a final adjudication on the merits and second, they remarkably deny that they had a full and fair opportunity to litigate the issue in the prior action.  Both arguments are without merit.

First, the fact of a settlement does not mean that there was no final adjudication

on the merits, as numerous courts have held, for collateral estoppel purposes.  In *Hartley v. Mentor Corp.*, 869 F.2d 1469 (Fed. Cir. 1989), the Court, in finding that the party had "vastly overstate[d] the proposition that settlement moots prior court rulings in a case," found that a negotiated settlement amounted to an adverse adjudication on the merits.  The *Hartley* court also pointed out that that in a previous case, "the Ninth Circuit specifically refused to vacate a district court's judgment and to hold that no collateral estoppel effect could arise from the court's findings simply because the controversy was mooted by settlement."  *Id.* at 1473 (citing *Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982)).  The *Ringsby* court noted, "If the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books."  *Id.*  Other courts have also applied nonmutual offensive collateral estoppel even where the first case settled.  In *Bates v. Union Oil Co.*, 944 F.2d 647 (9th Cir. 1991), *certiorari denied* 112 S.Ct. 1761, 503 U.S. 1005, 118 L.Ed.2d 424, the parties settled the first action and sought vacatur of the judgment.  In a subsequent action, the same court that had overseen the first action allowed preclusion, finding that that there had been a full and fair trial and that it would be a waste of judicial resources to retry the common issues.  Preclusion was allowed even as to punitive damages.  *Id.* at 652.  Similarly, in *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1187–1192 (5th Cir. 1982), *rehearing denied* 689 F.2d 190, *judgment vacated on other grounds*, 103 S.Ct. 1245, 460 U.S. 1007, 75 L.Ed.2d 476 (1983), after trial and findings of fact, nonmutual offensive preclusion was permitted despite settlement conditioned on vacatur of the judgment.  As these cases show, Defendants may not use the fact of settlement to create enormous and entirely unnecessary inefficiencies from the very beginning of this case.

Nor can Defendants argue that they did not have a full and fair opportunity to litigate the issues in *Tawney*. *Tawney* was litigated over five years by these very defendants, tried before a jury, and was then the subject of a carefully detailed findings of fact by the judge who presided over the trial.[1]  Despite Defendants' protests that they were denied appellate review in *Tawney*, they took a writ of certiorari to the United States Supreme Court, but withdrew it when the case settled.  *See NiSource, Inc. v. Estate of Tawney v. Goff*, 129 S.Ct. 1186 (2008).[2]  Further, although the West Virginia Supreme Court denied review of the judgment, it clearly did so after consideration, ordering Defendants to reduce their 150-page petition to 75 pages, and taking more than six weeks to deny review.  (*See Tawney*, Class Counsel's Amended Motion for Attorney's Fees and Reimbursement of Expenses and Memorandum In Support, at 6, dated Nov. 18, 2008 (attached hereto as Exhibit C to the Stellings Decl.).)  In any case, "The availability of judicial review is merely one factor to consider in determining whether issue preclusion applies."  *John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers*, 913 F.2d 544, 563 (8th Cir. 1990) (citing Restatement (Second) of Judgments § 13 comment g (1982).  In the *John Morrell* case, the Court quoted Judge Friendly, who wrote, "'Finality' in the context of [issue preclusion] may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."  *Id.* (citing *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).

---

[1] The *Tawney* trial record is currently sealed, but Plaintiff intends, at an appropriate time, to issue a subpoena for that record and other sworn testimony given by Defendants in that case with the aim of prosecuting this case as efficiently as possible.

[2] In addition, as part of Defendants' vigorous defense of the *Tawney* case, they sought appellate review of the class certification order, and received a full hearing before the West Virginia Supreme Court on several questions that the trial court certified to that court.  The West Virginia

Defendants also argue that Plaintiff's declaratory judgment claim fails because Plaintiff is attempting to bar Defendants from defending themselves against her claims. This, too, is incorrect.  The declaratory judgment Plaintiff seeks would not bar Defendants from defending themselves, but would only streamline and rationalize this litigation by declaring that the issues and facts decided in *Tawney* have preclusive effect here.  To state a claim for a declaratory judgment, it must be "demonstrated that there is a substantial live controversy between the parties, who have adverse interests, and this issue is of sufficient immediacy and reality to warrant the issuance of a declaration of rights or other legal relations." *Executive Risk Indem., Inc. v. Charleston Area Medical Center, Inc.*,  681 F. Supp. 2d 694, 714 (S.D. W.Va. 2009) (citations omitted).[3]  Plaintiff has met those requirements, and Count I should not be dismissed.

## IV.     THE STATUTE OF LIMITATIONS HAS NOT YET BEGUN TO RUN ON PLAINTIFF'S BREACH OF CONTRACT CLAIMS.

Defendants argue that Plaintiff's breach of contract claim is barred by Virginia's five-year statute of limitations.  *See* Va. Code § 8.01-230.  As an affirmative defense, Defendants bear the burden of demonstrating that the statute of limitations bars Plaintiff's claims here.  *See Torkie-Tork v. Wyeth*, 2010 WL 2505566 (E.D. Va. Jun. 16, 2010) (citing *Lo v. Burke*, 249 Va. 311, 455 S.E.2d 9, 12 (Va. 1995)).  Defendants cannot carry that burden for three reasons.  First,

---

Supreme Court issued an opinion on those questions.  *See Tawney v. Columbia Natural Resources, LLC*, 219 W. Va. 266, 633 S.E.2d 22 (W.Va. 2006).

[3] Although Defendants state that a district court in Ohio rejected a request for a declaratory judgment stemming from the fully adjudicated *Tawney* case, it is difficult to tell what the Court in *Lutz v. Chesapeake Appalachia, LLC*, 2010 U.S. Dist. LEXIS 60429, at *17 (N.D. Ohio Jun. 18, 2010), was addressing in dismissing, in one sentence, one count in a case against Chesapeake Appalachia.  The Court did not address any of the issues of collateral estoppel or the credit that federal courts are to afford state court judgments.  Second, it is not clear from the district court decision exactly what the plaintiffs had pled in that case.  The *Lutz* court wrote that plaintiffs were "somehow claiming a right to recover because of a jury verdict in West Virginia not involving [them]," *id.*, but Plaintiff here is not claiming a "right to recover" from the *Tawney* case, only that the same facts and issues already litigated in that case not be re-litigated here. (*See* Amended Compl. ¶ 68.)

the statute of limitations has been tolled by Defendants' fraudulent concealment of their conduct, as the *Tawney* court recognized in its detailed findings of fact.  Second, under the "continuing services" rule recognized in Virginia, the statute of limitations has not yet begun to run on Plaintiff's claims.  Third, there is ample authority under Virginia law holding that each of Defendants' discrete and interval-based breaches constituted a new cause of action, re-starting the statute of limitations, and thus allowing claims stretching back a minimum of five years.

A.     **Defendants' Fraudulent Concealment Of Their Conduct Has Tolled The Statute Of Limitations.**

The statute of limitations on Plaintiff's claims has been tolled by Defendants' fraudulent concealment.  The fraudulent concealment doctrine prevents a defendant from concealing a fraud and then seeking the benefit of the statute of limitations.  *See Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (internal citation omitted).  Virginia has codified the doctrine of fraudulent concealment in Va. Code § 8.01-229(D).  To invoke tolling under this provision, a plaintiff must show that the defendant "undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action."  *Grimes v. Suzukawa*, 262 Va. 330, 332 (Va. 2001); *see also Newman v. Walker*, 270 Va. 291, 298 (Va. 2005).

In addition, the Virginia Supreme Court has endorsed the doctrine of equitable estoppel to preclude a defendant from raising a statute of limitations defense.  *See F.D.I.C. v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993) (citing Virginia Supreme Court cases).  Equitable estoppel may be invoked

> where the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire.  As applied to the statute of limitations, the central premise is that one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of

> limitations, and then be permitted to plead the very delay caused
> by his course of conduct as a defense to the action when brought.

*Barry v. Donnelly*, 781 F.2d 1040, 1042 (4th Cir. 1986). Conduct short of fraud may also estop a party from asserting the statute of limitations as a defense; instead, to establish equitable estoppel, the party must only show that the defendant has misled her to her prejudice. *See id*. Both fraudulent concealment and equitable estoppel work to toll the statute of limitations where plaintiff has pled facts to support either doctrine. *See Objective Interface Systems v. Garrett*, 2006 U.S. Dist. LEXIS 79722, at *13 (E.D. Va. Oct. 27, 2006).

Here, Plaintiff has alleged that fraudulent concealment pervaded every act and omission through which Defendants systematically underpaid Plaintiff and the Class the royalties due to them and intentionally lulled Plaintiff and the Class into a false sense of security by giving regular but inaccurate accountings. In an interconnected series of business dealings and decisions, designed and engineered by senior corporate management for their own personal benefit, Defendants concocted artificially fixed below-market prices, produced improper measurements and under-reporting of volumes of gas produced attributable to Plaintiffs' interests. The Amended Complaint includes detailed allegations of Defendants' fraudulent concealment of their misconduct, including, for example, the actual deductions taken for post-wellhead costs (¶ 49), non-arm's length sales to affiliated entities (¶ 57), and line loss deductions (¶ 59). The monthly accounting statements Plaintiff and Class members received from Defendants worked to mislead them into believing that, for example, Defendants were taking no deductions from the price of gas sold, and that the gas was being sold at a fair market value. The Amended Complaint further notes that Defendants are in exclusive possession of information from which Plaintiff amd the Class could have learned of these deliberate and fraudulent acts. (*See* ¶ 62.) The fraudulent concealment and equitable estoppel doctrines are designed to prevent

-12-

a defendant from benefiting from exactly these types of actions.  As a result, the statute of limitations should be deemed tolled for purposes of all claims in this case.

In its Findings of Facts, Conclusions of Law and Order, cited in Plaintiff's Amended Complaint here (*see* ¶ 2, pp. 3-4), the *Tawney* Court specifically found that the Chesapeake Defendants had committed fraudulent concealment in systematically underpaying the royalties due to the plaintiffs:

> The misstatements of material facts, as contained in the monthly accounting statements sent to the Plaintiffs/lessors, is conduct by [the Chesapeake] Defendants that the jury found to be fraudulent. Plaintiffs' claim was not simply that they may have sued sooner if Plaintiffs had known they were being cheated.  It was that [the Chesapeake] Defendants, by fraud, concealed for 10 years the facts, and, by concealing the facts, enabled the [Chesapeake] Defendants to continuously "skim" money due Plaintiffs for that extensive period.

*Tawney*, 2007 WL 5539870, at *6 (quoted in Am. Compl. ¶ 2).  In finding punitive damages were warranted, the *Tawney* Court noted the plaintiffs' allegations of "deliberately, fraudulently, and designedly misrepresent[ing] material facts … to conceal from Plaintiffs the true facts relating to" underpayment of royalties, and the jury's finding of fraud "in the relation to the underpayment of royalties."  *Id.* at *20; Am. Compl. ¶ 2.  Plaintiff has more than plausibly alleged, especially in light of the *Tawney* Court's findings, that Defendants fraudulently concealed their misconduct here, and may not use a statute of limitations defense to dismiss these claims.

**B.**     **The Statute Of Limitations Is Tolled By Virginia's "Continuing Duty" Rule.**

Because Plaintiff and Defendants are in a continuing relationship of trust and confidence, in which Defendants have undertaken to provide ongoing services to Plaintiff and the Class, the statute of limitations is tolled under Virginia's "continuing duty" rule.  Under this doctrine, once a party has taken on particular undertakings, the statute of limitations does not run

until the undertakings had terminated.  *See Boone v. C. Arthur Weaver Co., Inc.*, 365 S.E.2d 764, 766-67 (Va. 1988) (addressing services provided by accountant).  The Virginia Supreme Court has repeatedly applied this rule to relationships such as the one at issue here, where Defendants have undertaken to provide accurate operational and accounting information to Plaintiff and Class members, who are wholly reliant on Defendants to perform these services.  *See also, e.g., Keller v. Denny*, 232 Va. 512, 352 S.E.2d 327 (Va. 1987) (concerning attorney-client relationship); *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979) (concerning malpractice by dentist); *McCormick v. Romans & Gunn*, 214 Va. 144, 148-49, 198 S.E.2d 651, 654-55 (Va. 1973) (applying continuing services rule to four years of attorney-client services).  In one case, the Virginia Supreme Court applied the doctrine to deny a statute of limitations defense where the services lasted over a 17-year period.  *See Wilson v. Miller*, 104 Va.. 446, 51 S.E. 837, 838 (Va. 1905).  The statute of limitations has thus not run on Plaintiff's claim here, because the services Defendants have undertaken to provide have not terminated.

C.    **Alternatively, Each Underpayment Constitutes A New Injury, Re-Setting The Statute Of Limitations.**

Even if the Court finds that neither fraudulent concealment nor the continuing services rule applies, Defendants' motion should be denied because, under ample Virginia authority, a new cause of action accrues each time Defendants calculate and remit a royalty payment that underpays Plaintiff and Class members.

The Virginia Supreme Court, in *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 360 S.E.2d 841 (Va. 1987), stated that where the injury is "of a permanent nature and one that produces 'all the damages which can ever result from it, then the entire damages must be recovered in one action' and the statute of limitations begins to run from the date of the wrongful act.  Conversely, when wrongful acts are not continuous but occur only at intervals,

-14-

each occurrence inflicts a new injury and gives rise to a new and separate cause of action." *Id.* at

239.  The Court reaffirmed this holding in *Am Phys. Therapy Ass'n v. Fed'n of State Bds. of*

*Phys. Therapy*, 271 Va. 481, 628 S.E.2d 928, 929 (Va. 2006), where it found that each

imposition of a new, improper fee gave rise to a distinct breach of contract.

   Periodic payments (or underpayments) on leases, based on ongoing revenues from

ongoing production, present a classic example of wrongful acts occurring "at intervals," and not

a case where the first breach produces "all the damages which can ever result from it."  *Hampton*

*Roads*, 234 Va. at 239.  The defendants here have taken, and continue to take, a series of

affirmative, discrete actions, each of which constitutes a new breach.  This distinguishes this case

from those such as *Hunter v. Custom Business Graphics*, 635 F. Supp. 2d 420 (E.D. Va. 2009),

relied on by Defendants, where the defendant took two single actions in setting the terms of an

employment contract, but did not thereafter make any changes to the employee's compensation.

*See id.* at 433.  Here, each of the underpayments made to Plaintiff and the Class were dependent

on Defendants making a series of affirmative, ongoing, continuous miscalculations and improper

deductions, which had to be re-calculated each time royalties were made.  These separate and

discrete underpayments constituted separate and discrete breaches, with a new limitations period

for each.  *See Corinthian Mortgage Corp. v. ChoicePoint Precision Marketing, LLC*, 2008 U.S.

Dist. LEXIS 53573, at *12 (E.D. Va. Jul. 14, 2008) (finding that defendant's monthly processing

of work orders using proprietary criteria, from which a separate group of names were collected

and then sent out, constituted separate injuries, with new limitations period).  Further, as the

*Hunter* court acknowledged, the question of whether the defendant's actions "constituted a single

continuous breach … or a series of separate breaches… depends upon the relevant facts."  *Id.* at

431, and is thus not amenable to a ruling on a motion to dismiss.  Indeed, the *Hunter* case arose

on summary judgment, with the benefit of a full record.

Multiple other courts have reached the conclusion that each royalty underpayment gives rise to a new cause of action. *See Temple v. Millers Cove Energy Company, Inc.*, 2000 U.S. App. LEXIS 10924, at \*11-12 (6th Cir. May 9, 2000) (applying Virginia law and finding that where there was an obligation to make royalty payments pursuant to a monthly lease, a separate cause of action accrued each time the defendant failed to make a payment, stating "cause of action did not accrue until [the royalty owner] was injured—that is, until the next monthly royalty payment came due and [the defendant] paid a reduced amount. Thereafter, because the leases required the defendant to make a new payment every month, a distinct injury occurred and a separate cause of action accrued—with every reduced or missing payment."); *see also Hondo Oil & Gas Company v. Texas Crude Operators*, 970 F.2d 1433 (5th Cir. 1992) (reaching same conclusion in applying Texas law to an oil and gas lease, stating, "where a contract provides for monthly payments and not a present sale of gas, a cause of action accrues when a monthly payment is due."); *Rupe v. Triton Oil & Gas Corp.*, 806 F. Supp. 1495 (D. Kan. 1992) (same, applying Kansas law); *Armstrong Petroleum v. Tri-Valley Oil & Gas*, 116 Cal. App. 4th 1375 (Cal. 2004) (the same under California law); *Beson, Inc. v. Coca-Cola Company, et al.*, 2009 U.S. App. LEXIS 15409 (3rd Cir. Jul. 13, 2009) (applying the same rule to a beverage royalty case). The Court should, at a minimum, join these decisions in finding that Plaintiff's claims encompassing the last five years should continue.

## V.    PLAINTIFF'S OTHER CLAIMS ARE NOT BARRED BY THE STATUTES OF LIMITATIONS.

The statute of limitations does not bar Plaintiff's other claims for two of the same reasons that Plaintiff's breach of contract claim is not barred. First, fraudulent concealment and/or the equitable tolling doctrine applies equally to each of Plaintiff's claims in addition to

-16-

breach of contract, as neither the applicable statute nor case law limit their application to breach of contract claims.  Second, the Virginia Supreme Court's principle that when wrongful acts occur "at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action," *Hampton Roads*, 234 Va. at 239, is not limited to contract claims.  The principle was first stated in a case involving a steam pumping station's interference with the operation of a property owner's mill, *Norfolk & W. Ry. Co. v. Allen*, 118 Va. 428, 87 S.E. 558 (Va. 1915), and has been applied in a wide variety of cases.  *See, e.g.*, *Hampton Roads*, 234 Va. at 239 (involving the intermittent discharge of raw sewage from county pumping station onto a landowner's property); *Corinthian Mortgage Corp.*, 2008 U.S. Dist. LEXIS 53573, at *12 (applying doctrine to count for breach of covenant of good faith and fair dealing).[4]

## VI.   PLAINTIFF'S CLAIMS ARE PROPERLY PLED AND PROPERLY ASSERTED INDEPENDENT OF AND IN ADDITION TO THE BREACH OF CONTRACT CLAIM.

### A.   Plaintiff Has More Than Sufficiently Alleged A Breach Of Contract (Count VIII).

Defendants' argument that Plaintiff has failed to identify a breach of any contractual duty in the leases is frivolous.  The Amended Complaint more than meets the requirement that Defendants be on notice of the contracts and claims of breach at issue – that Defendants receive "fair notice of what the claim … is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quotation omitted).  In *Facility Wizard Software, Inc. v. Southeastern Technical Svcs., Inc.*, 647 F. Supp. 2d 938, 950 (N.D. Ill. 2009), the Court found that it was sufficient to state a breach of contract claim to allege simply that the other party's use

---

[4] The continuing services doctrine also specifically applies to Plaintiff's claim for negligence in Defendants' voluntary undertakings.  *See Boone v. C. Arthur Weaver Co., Inc.*, 365 S.E.2d 764, 766-67 (Va. 1988) (holding that the statute of limitations in a negligence action does not begin to run until the particular undertakings of the accountants that formed the basis of the action had terminated).

of trade secrets exceeded the terms of a license agreement.  The Court noted that it was aware of no authority "that requires a plaintiff to identify which contractual provision was breached so long as the contract itself is identified."  *Id.*  There is no doubt that Defendants are on notice of the contracts and the breaches at issue.  Not only were they the subject of two fully litigated class actions against these very defendants, the contracts and the breaches are fully set forth in the Amended Complaint.

Defendants assert that Plaintiff "fails to identify" the contracts at issue, and implies that the extent of Plaintiff's allegations of breach of contract is in paragraph 92 of the Amended Complaint.  (*See* Br. at 10.)  This is simply incorrect.  The Amended Complaint specifically defines the leases at issue in Paragraph 13A, and then provides specific examples of Defendants' breaches in the paragraphs that follow.  The Amended Complaint explains that Plaintiff and the Class are owed royalties from Chesapeake under the leases, explaining that "As lessee and/or operator, Chesapeake is responsible for the proper determination, calculation, distribution, reporting, and payment of Royalties due and owing to Plaintiff and the Class Members on Gas produced by Chesapeake."  (Am. Compl. ¶ 25.)  That paragraph also details Chesapeake's duties "as lessee and/or operator"; namely, that "Chesapeake is responsible for the proper determination, calculation, distribution, reporting, and payment of Royalties due and owing to Plaintiff and the Class Members on Gas produced by Chesapeake."  The Amended Complaint goes on to describe Chesapeake's undertakings and responsibilities for the production and marketing of the gas produced "from the Leases," for the proper calculation of royalties due to Plaintiff and the Class, and the proper disclosure of, among other things, the amount and price of the gas being sold.  (*Id.*)  The Amended Complaint then sets forth how Chesapeake has failed to pay the true Royalties owed to Plaintiff and the Class through detailed allegations of

-18-

Defendants':

- taking of improper deductions (¶ 29),

- sale of gas in an unmarketable condition in non-arm's length transactions and at below-market prices (¶ 30),

- imposition of improper costs on Class members who bear a proportionate share of costs for post-wellhead operations and activities (¶ 31), and

- misrepresentation of key facts concerning the royalties properly owed to Plaintiff and the Class "in breach and violation of the Leases (¶ 32).

These allegations more than suffice to put Defendants on notice of the contracts at issue this case and how they have been breached.[5]

### B.   Plaintiff's Claims For Breach Of Continuing Duties (Count II) And Breach Of Duties Of Marketing, Prudent Operator, Good Faith And Fair Dealing (Count VII) Should Not Be Dismissed.

Plaintiff asserts well-establishes causes of action for Breach of Continuing Duties, Obligations and Services and for Breach of Duties of Marketing, Prudent Operator, Good Faith and Fair Dealing.  Defendants misstate the bases of these causes of action, grouping them together to argue that "Virginia law does not recognize an independent breach of implied duties arising out of a commercial contract."  (Br. at 11.)  However, Plaintiff alleges more than a breach

---

[5] The authority Defendants offer as including "similar pleading deficiencies" only highlight the sufficiency of Plaintiff's allegations here.  In *Khair v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 58922 (E.D.Va. Jun. 14, 2010), a case apparently stemming from a foreclosure, the Court addressed a breach of contract claim against the defendant company that assisted in authorizing the construction of the property.  That defendant, which was one of several in the case, was mentioned only four times in the complaint, and never in reference to an identifiable contract.  *See id.* at *13-14.  Defendants also cite a case in which the plaintiff could not identify the scope of the defendant's duties under the purported contract, *Cincinnati Ins. Co. v. Cost. Co.*, 2010 U.S. Dist. LEXIS 46387 (N.D. W.Va. 2010), and a case where only "bare allegations" had been made involving hospital bylaws that physician plaintiffs contended created a contractual

of a standard commercial contract through these two claims.

### 1.    Breach Of Continuing Duties, Obligations And Services

In Count II (Breach of Continuing Duties, Obligations and Services), Plaintiff alleges that Defendants voluntarily undertook to provide certain technical services to Plaintiff and the Class, including, for example, to operate the well, produce the gas, measure the amount produced, market and sell it, and then properly calculate and provide an accounting for the royalties owed to Plaintiff and the Class.  (Am Compl. ¶ 71.)  The Amended Complaint alleges that Defendants then breached those duties by misrepresenting material facts relating to those services and by systematically underpaying the royalties.

The implied duties of an operator under an oil and gas lease are well-established, and Defendants could not reasonably argue that these implied duties do not exist or that they are not bound by them.  *See Garman v. Conoco, Inc.*, 886 P.2d 652, 659 (Colo. 1994) (recognizing the implied duty to market); *Gilmore v. Superior Oil Co.*, 192 Kan 388, 391, 388 P.2d 602, 605 (Kan. 1964) (where reasonable diligence to market "is not expressed in the lease, it is generally implied").  One of the implied duties is the duty to "operate diligently and prudently."  *Garman*, 886 P.2d at 659.  "'Embodied in the duty to operate diligently and prudently is the implied covenant to market.'"  *Id.*  (*quoting Davis v. Cramer*, 808 P.2d 358 (Colo. 1991)).  The standard of care in which lessors are expected to carry out these duties is "that of a reasonably prudent operator under the same or similar facts and circumstances."  *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567-68 (Tx. 1981) (citations omitted); *see also Smith v. Amoco Prod. Co.*, 272 Ks. 58, 31 P.3d 255, 270, 272 (Kan. 2001) ("Under the reasonably prudent operator standard, Amoco must not only consider its own economic interest but also take into account the interest of [the

---

relationship between the physicians and the hospital.  *Grant v. Adventist Health System Sunbelt Health Care Corp.*, 2009 U.S. Dist. LEXIS 109524, at *38 (W.D.N.C. Jul. 28, 2009).

lessor]"); *Southwest Gas Producing Co. v. Seale*, 191 So.2d 115, 119-20 (Miss. 1966)

(recognizing that "the great majority of jurisdictions . . . apply the 'prudent operator' standard"

and describing the standard as "Whatever, in the circumstances, would be reasonably expected of

operators of ordinary prudence, having regard to the interest of both lessor and lessee, in what is

required.").

      None of the cases upon which Defendants rely to support its argument against a

cause of action for breach of implied duties in Virginia are oil or gas lease cases, and none

involved the types of voluntary undertakings described in the Amended Complaint.[6]  Thus, while

there may not be a separate claim for breach of good faith in a general breach of contract case in

Virginia, Defendants have cited no authority holding that implied duties do not exist with respect

to oil and gas leases.  Those duties should be recognized and enforced here as they have in other

jurisdictions.

     2.     **Breach Of Duties Of Marketing, Prudent Operator, Good Faith And Fair Dealing**

      Count VII (Breach of Duties of Marketing, Prudent Operator, Good Faith and Fair

Dealing) is also properly pled.  The Amended Complaint makes clear that this claim is not

simply a disguised breach of contract claim and is not based on breaches of express terms of the

leases.  Instead, Plaintiff alleges that Defendants have "certain obligations resulting from

covenants and duties that are implied and imposed on the Chesapeake Defendants as a matter of

law…"  (Am. Compl. ¶ 88.)  Defendants do not deny that these implied duties exist. Plaintiff

alleges Defendants have breached these duties, in addition to the breach of express obligations in

---

[6] *See Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996) (involving commercial banking transaction); *Allaun v. Scott*, 59 Va. Cir. 461 (2002); *Wright v. St. Charles Water Auth.*, 59 Va. Cir. 244 (Va. Cir. Ct. 2002) (involving breach of investment agreement); *United Leasing Corp. v. Resource Bank*, 58 Va. Cir. 96 (Va. Cir. Ct. 2001) (involving rescission of release from claims arising from commercial loans).

the leases.  Such a claim is well accepted under Virginia law.  *See, e.g., Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 156 F.3d 535, 542 (4th Cir. 1998) (reversing dismissal of breach of good faith claim and stating that "although the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith …" (emphasis in original); *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450-51 (E.D. Va. 2009) (denying motion to dismiss claim for breach of good faith and fair dealing despite presence of express contract where plaintiff alleged that defendant's actions were not "merely unfavorable, but actually dishonest").

Defendants' cited authority *supports* the existence of a claim for breach of the duties of marketing, prudent operator, good faith and fair dealing.  (*See* Br. at 12.)  In the cases cited by Defendants, the courts recognized the covenant of good faith and fair dealing, but found only that such a covenant could not be used to override explicit contractual terms – either to address conduct that the contract allowed or imply terms not present.  *See Omega World Travel v. TWA*, 111 F.3d 14, 16-17 (4th Cir. 1997); *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (breach of good faith and fair dealing could not apply to a case involving termination of a contract that provided for at-will termination); *Ward's Equip. v. New Holland of N. Am.*, 254 Va. 379, 385 (Va. 1997) (recognizing covenant of good faith and fair dealing, but stating it cannot be the vehicle for creating duties that do not otherwise exist under an unambiguous contract).[7]  Plaintiff is not seeking to override any explicit contractual terms – and Defendants have not identified any way in which this claim would do so – but is

---

[7] Defendants' other case, *Brauer*, 251 Va. at 33, addressed a claim for breach of good faith and fair dealing in a case involving the sale of goods governed, unlike here, by Section 8.01-203 of the Uniform Commercial Code.

instead alleging that Defendants violated duties imposed by law.[8]

**C.    Plaintiff's Breach Of Fiduciary Duty Claim (Count XI) Is Properly Pled.**

Defendants, sophisticated energy producers in sole possession of a host of information directly concerning royalties owed to Plaintiff and Class members for use of their land, disclaim any fiduciary duty to Plaintiff and the Class.  In seeking to re-cast this relationship as a "general business relationship," Defendants ignore numerous decisions contrary to their position here.  A fiduciary relationship exists where "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence."  *H-B Ltd. Partnership v. Wimmer*, 220 Va. 176, 179, 257 S.E.2d 770, 773 (Va. 1979).  The question of whether a fiduciary relationship exists is ordinarily a question of fact.  *See Connelly v. General Motors Corp.*, 880 F. Supp. 1100, 1119 (E.D. Va. 1995) (citing *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592, 595 (Va. 1984)).

Plaintiff and Class members, possessing inferior knowledge and access to information, are dependent on Defendants to act in good faith in carrying out the operating and accounting services they have undertaken to perform under the leases.  Such a relationship fits squarely within the definition of a fiduciary relationship, as numerous courts in the oil and gas context have recognized.  *See, e.g., Roberts Ranch Co. v. Exxon Corp.*, 43 F. Supp. 2d 1252, 1261 (W.D. Okla. 1997); *J.C. Hill v. Marathon Oil Co.*, 2010 WL 2365477 (W.D. Okla. Jun. 9, 2010) (certifying class of lessors on a claim for breach of fiduciary duty by lessee for failing to properly calculate royalties); *Atlantic Richfield v. Farm Credit Bank*, 226 F.3d 1138, 1163 (10th Cir. 2000) (reversing grant of summary judgment on royalty owner's claim for breach of

---

[8] There is considerable tension between Defendants' position that Plaintiff has not alleged a breach of contract (Br. at 9), and their position that Plaintiffs have alleged breaches of duties

fiduciary duty); *Seeco v. Hales*, 341 Ark. 673, 698 (Ark. 2000) (affirming jury's finding that gas producer and royalty owners are in a fiduciary relationship).[9]

Defendants argue that there can be no claim for breach of fiduciary duty where Defendants' duties arise from a written contract. Defendants are wrong on this point, as Virginia law allows a plaintiff to plead alternative theories of liability. *See Wright v. Everett*, 197 Va. 608, 615, 90 S.E.2d 855, 860 (Va. 1956) ("we have held that even though the foundation of the action arose out of privity of contract between the parties, if the same alleged facts show a breach of duty constituting a tortious neglect, plaintiff has a right to elect whether he will proceed in tort or assumpsit."). Additionally, however, Defendants' argument is based on an unduly cramped reading of the Amended Complaint, which contains a wealth of allegations of torts – including fraud – separate and apart from the leases themselves, as well as allegations of Defendants' undertakings to handle and account for Plaintiff's and Class members' monies and property, which create a fiduciary duty.[10]

Even without those allegations, "It is well established that the same conduct constituting the breach of a contractual obligation may also constitute a breach of a duty arising out of the relationship created by the contract but independent of the contract itself." *La Barte v. Seneca Resources Corp.*, 285 A.D.2d 974, 976, 728 N.Y.S.2d 618, 622 (N.Y. 1st Dep't 2001).

---

arising out of the leases sufficient to negate claims for breaches of implied duties.

[9] Defendants cite cases not involving oil and gas leases for the proposition that no fiduciary duty exists between parties in "general business relationships." (Br. at 12.) *See State Farm Mut. Auto Ins. Co. v. Floyd*, 235 Va. 136, 143 (Va. 1988) (addressing relationship between insurer and insured); *Clemens v. Home Savers, LLC*, 2007 U.S. Dist. LEXIS 70410, at *5-7 (E.D. Va. Sept. 21, 2007) (concerning relationship between consumer and company engaged in home re-financing); and *Augusta Mutual Ins. Co. v. Mason*, 645 S.E.2d 290 (Va. 2007) (involving a dispute between a building contractor and his principal).

[10] Neither case cited by Defendants in support of this argument involved either such allegations of fraud or allegations of the specific undertakings that Plaintiff has alleged here. *See Augusta*, 274 Va. 199; *Clemens*, 2007 U.S. Dist. LEXIS 70410.

In *La Barte*, where plaintiff royalty owners brought a claim for breach of fiduciary duty against a producer for failing to market, the court denied the motion to dismiss this claim, noting that other courts had recognized a fiduciary duty of operators to market oil at the highest price available. *Id.* (citing *Coosewood v. Meridian Oil Co.*, 25 F.3d 920, 931 (10th Cir. 1994)).  Similarly, the Fifth Circuit has held that where a property owner was obligated to pay a debt from royalties he received from an oil and gas lease, he had a fiduciary duty to account for and pay the royalties. *See Gurley v. Lindsley*, 459 F.2d 268, 275 (5th Cir. 1972).  The Court found that by receiving income from the land from which royalties were owed, the landowner became a fiduciary to his debtor, with a "duty and obligation to account to and promptly pay any amounts due and owing . . ." *Id.*

Here, Plaintiffs have alleged Defendants' undertakings to handle monies and properties of the Plaintiff and the Class.  Courts have specifically found that where one takes on an accounting duty for another, and is entrusted to hold and account for money or property, then a fiduciary relationship can exist between the parties; these courts have not lingered over whether these duties arose exclusively from a contract.[11]  *See Allen Realty Corp. v. Holbert*, 227 Va. 441, 446, 318 S.E.2d 592, 595 (Va. 1984) (citing *Cafritz v. Corp. Audit Co.*, 1945 U.S. Dist. LEXIS 2251, at *12 (D.D.C. May 14, 1945) (stating that it is "well established that when the defendant is an accounting party, and stands as one occupying a fiduciary relation toward the plaintiff, because of money or property [entrusted], the burden is upon him to show that he has performed

---

[11] Similarly, Virginia courts have found that joint venturers can be in a fiduciary relationship even where a contract is present, and have not analyzed whether or not the defendants' duties arose exclusively from a contract.  *See Roark v. Hicks*, 234 Va. 470, 475, 362 S.E.2d 711, 714 (Va. 1987).  The *Roark* court explained that "A joint venture exists where two or more parties enter into a special combination for the purpose of a specific business undertaking, jointly seeking a profit, gain, or other benefit, without any actual partnership or corporate designation." *Id.*

his trust and the manner of its performance.").

Defendants finally argue that there is nothing in the leases establishing them as fiduciaries, but the leases' silence on this point should be construed against Defendants, the drafter of these leases, as numerous courts have recognized.  *See Gilmore*, 192 Kan. at 391, 388 P.2d at 605 ("the lessee has the opportunity to protect itself by the manner in which it draws the lease."); *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001) ("a royalty clause should be interpreted against the party who offered it, and in light of the fact that the royalty clause is the means by which the lessor receives the primary consideration for a productive lease.").  This is also consistent with Virginia law of contract interpretation.  *Forest v. Kentucky-Ohio Gas Acquisition Corp.*, 1999 WL 33117234, at *2 (Va. Cir. Ct. Nov. 23, 1999) (contracts are to be construed against the drafter).

### D.   Plaintiff's Claim For Negligence (Count XIII) Is Properly Pled.

To state a claim for negligence, a plaintiff must plead a legal duty, breach of the duty, and injury.  *See Jappell v. Am. Ass'n of Blood Banks*, 162 F. Supp. 2d 476, 479-80 (E.D. Va. 2001) (denying motion to dismiss negligence claim and finding duty established by defendant's undertaking to set standards for the blood bank industry).  Plaintiff has alleged that Defendants voluntarily undertook certain duties to provide continuing technical, accounting, and information services to Plaintiff and the Class.  Plaintiff alleges that Defendants breached those duties, alleging, for example, that Defendants, having undertaken to send accounting statements to Plaintiff and the Class, then misreported and withheld key information about the production, measurement, and sale of gas, as well as the true royalties owed to Plaintiff.  (*See* Am. Compl. ¶¶ 42-46.)  The Amended Complaint also alleges that Defendants negligently maintained its gathering lines and then fraudulently concealed the deductions for line loss in their monthly statements, damaging Plaintiff.  (¶¶ 58-59.)  These allegations are sufficient to support a claim

-26-

for negligence.

Defendants do not address these allegations, let alone explain how they support Defendants' repeated assertion that the "plaintiff's claimed injury is based entirely on the alleged breach of contract…" (Br. at 14.)  This is because they do not; instead, they show that Plaintiff was also damaged by Defendants' voluntarily undertaken actions.  Thus, Defendants' reliance on cases holding that Plaintiff may not assert negligence claims "arising out of an alleged breach of her contractual agreement with Defendants" (Br. at 13-14) is misplaced.  In fact, their authority affirms the well-established principle that a plaintiff may allege both a breach of contract and a breach of a common law duty.  Defendants point to *Tidewater Beverage Svcs. v. Coca Cola Co.*, 907 F. Supp. 943, 947-48 (E.D. Va. 1995) for the proposition that "the economic loss doctrine bars Plaintiff from recovering her purely economic losses in a related tort action" (Br. at 13), but there, the Court specifically allowed a tort and contract claim to proceed in tandem, finding, as here, that the defendant was "alleged to have breached both its contractual duties … and its duty under the law to not commit fraud."  Therefore, "Defendant is not entitled to the protection of the economic loss rule." *Id.* at 948.[12]  Plaintiff has alleged a breach of both duties here, too, and her negligence claim should not be dismissed.

**E.**     **Plaintiff's Conversion Claim (Count XII) Is Properly Pled.**

Conversion is "any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights."  *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (Va. 2001).  In arguing that Plaintiff's conversion claim should be dismissed, Defendants play the same note again, asserting that the conversion claim is merely a re-stated contract claim.

---

[12] Defendants' other cited case, *Filak v. George*, 267 Va. 612, 618 (Va. 2004) (cited at p. 14), did not involve a negligence claim or any mention of voluntary undertakings.  Instead, the Court affirmed the dismissal of a claim for constructive fraud where it found that the insurance agent

(Br. at 14.)  Defendants again ignore the allegations in the Amended Complaint that Defendants not only breached the leases at issue, but also violated their implied duties and duties voluntarily undertaken, including the production, measurement, and sale of the gas, and the properly calculation and reporting of royalties due Plaintiff and the Class.  Defendants wrongfully retained property belonging to Plaintiff through the breach of these implied and voluntarily undertaken duties.  A conversion claim is properly stated in these circumstances, as the court in *Clark v. Slick Oil Co.*, 88 Oka. 55, 211 P. 496 (Okla. 1922), applying the same standard as Virginia's in a case involving breach of an oil and gas lease, found.  *Id.* at 502.

F.     **Plaintiff's Claim For Unjust Enrichment (Count V) Is Properly Asserted And Pled.**

Defendants argue that Plaintiff is precluded from asserting a claim for unjust enrichment where there is a contract covering the same subject.[13]  This argument, again, ignores the multitude of allegations in the Amended Complaint that involve breaches of duties arising from, and actions taken outside of the contract, and which resulted in Defendants' unjust enrichment.  Defendants' argument also misstates the relevant rules on pleading unjust enrichment.

To plead a claim for unjust enrichment, a plaintiff must allege the conferral of a benefit on defendant, defendant's knowledge of that conferral, and "defendant's acceptance or retention of the benefit under circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Jones v. Link*, 493 F. Supp. 2d 765, 772 (E.D. Va. 2007).  The Amended Complaint alleges Defendants' improper withholding of monies due to Plaintiff and Class members, accomplished through self-dealing, concealment, and

---

defendant had no duties to the plaintiffs outside of the contract, only a duty assumed by the parties' agreement.

misrepresentations contained in statements provided to Plaintiff and Class members as part of accounting and operational services undertaken by Defendants.  These allegations are more than sufficient to state a claim for unjust enrichment.

Contrary to Defendants' assertions, Plaintiff may plead unjust enrichment along with breach of contract claims, as numerous courts in Virginia have recognized.  *See Virginia Elec. & Power Co. v. Broe Growth Capital LLC*, 2007 WL 2071726 (E.D. Va. Jul. 17, 2007) (rejecting defendant's position that an unjust enrichment claim cannot "coexist" with a breach of contract claim) (citing *Atl. Credit & Fin. Special Fin. Unit, LLC v. MBNA Am. Bank, N.A.*, 2001 U.S. Dist. LEXIS 10957, at * 15 and n. 6 (W.D.Va. June 4, 2001) (denying motion to dismiss count for unjust enrichment)); *see also Ashco Int'l, Inc. v. Westmore Shopping Ctr. Assoc.*, 1997 WL 1070624 (Va. Cir. Ct. Jun. 19, 1997) (allowing plaintiff to plead both a breach of contract and quantum meruit claim and stating, "Plaintiff need not allege that the underlying contract is void or unenforceable to state a claim for relief for quantum meruit").

Although Defendants cite a Virginia state case for the proposition that pleading in the alternative is not allowed unless the validity of a contract is challenged, the right to plead in the alternative is a federal procedural rule governed by Federal Rule of Civil Procedure 8(d)(2) and applied here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  *See also* 5 Wright & Miller, Fed. Prac. & Proc. § 1283 (3d Ed.) (stating that a federal court sitting in diversity "should not be bound by a state law requiring that an election be made at a pleading stage, because a local practice of this type might cripple the flexible pleading provisions sanctioned by [Rule 8(d)(2)] and defeat the overriding federal policy of having disputes determined on their merits.").  Thus, authority purporting to state a Virginia state procedural rule is inapposite.  In any case,

---

[13] The first case Defendants cite for this "well-settled Virginia law" in fact applied West Virginia

Virginia courts, supported by statutory authority, allow plaintiffs to plead in the alternative.  *See Fox v. Deese*, 234 Va. 412, 422-23 (Va. 1987) (allowing pleading of alternative forms of recovery and citing Va. Code § 8.01-281, statute allowing alternative pleading); *Mar Tech Mechanical, Ltd. v. Chianelli Bldg. Corp.*, 54 Va. Cir. 569, 2001 WL 1262387, at *5 (Va. Cir. Ct. Mar. 6, 2001) (allowing plaintiff to plead both breach of contract and *quantum meruit* and citing Va. Code § 8.01-281).  For these reasons, Plaintiff's unjust enrichment claim should not be dismissed.

G.   **Plaintiff's Claims For Common Law Fraud And Fraudulent Concealment (Count IV) Are Pled With Sufficient Particularity And Should Not Be Dismissed.**

In arguing that Plaintiff's fraud claim should be dismissed, Defendants make a series of conclusory assertions, but largely ignore the substance of the Amended Complaint, and pretend five years of litigation in West Virginia testing these same allegations of fraud never happened.

Federal Rule of Civil Procedure 9(b) requires a party pleading fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The Fourth Circuit has held that this requires the plaintiff to state the "time, place, and contents of … false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Plaintiff has met this standard.  The Amended Complaint describes, for example, myriad misrepresentations found in the monthly accounting statements (*see, e.g.*, Am. Compl. ¶ 42), and with specificity.  The complaint alleges that in the statements' rate columns, "the Chesapeake Defendants falsely represented the rate or the price at which Plaintiff's and the Class Members' Gas was sold," (¶ 56)."  Plaintiff alleges that these misrepresentations were keyed in part to the

---

law.  *See Bright v. QSP, Inc.*, 20 F.3d 1300 (4th Cir. 1994).

Mahonia II contracts, which were not disclosed to the Class. (¶¶ 53, 56-57.)  Plaintiff's Amended

Complaint alleges material omissions, as well, of, for example, deductions taken, the total

amount actually due, and total charges of dollar deductions. (¶¶ 44-45.)  These allegations more

than sufficiently put Defendants "on notice of the conduct complained of."  *Westinghouse*, 176

F.3d at 784.

        Defendants also argue, again, that the fraud claim should be dismissed because

Plaintiff has only alleged violations of duties arising from the leases.  Defendants are incorrect.

As an initial matter, "Virginia law recognizes the separate tort of fraud, even where the parties

have agreed to a contract."  *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446-

47 (4th Cir. 1990).  As the *Tawney* court held, after a trial that tested many of the allegations

here, that the Chesapeake Defendants were found to have "acted willfully and wantonly when

they deliberately, fraudulently, and designedly misrepresented material facts to Plaintiffs, so as

to conceal from Plaintiffs the true facts relating to the unauthorized deduction from royalty of

post-production expenses and to the underpayment of royalties based on sales of gas to affiliates

and the forward sales.  *Fraud is an independent tort that amounts to misconduct far more*

*egregious than simple breach of contract. The Jury found that Defendants engaged in fraud in*

*relation to the underpayment of royalties due.*"  *Tawney*, 2007 WL 5539870, at *6 (emphasis

added).  Here, too, Plaintiff has alleged fraudulent conduct independent of the duties that existed

under the leases.  Defendants undertook to provide accounting statements to Plaintiff and the

Class, and once they did, they had an obligation to speak truthfully and fully.  (*See* ¶ 42.)  They

did not, as the Amended Complaint details, creating liability independent of the various breaches

of contract.  Plaintiff's fraud claim should not be dismissed.[14]

**H.**     **Plaintiff's Claim For Indemnification And Assumption Of Liability (Count IX) Is Properly Asserted And Pled.**

Count IX, for indemnification and assumption of liability, should not be dismissed.  Although Defendants completely ignore the allegations, the Amended Complaint clearly and in detail asserts the facts underlying this claim, stating that in 2003, NiSource/CEG sold CNR, Chesapeake's predecessor, to a company known as Triana Energy Holdings, LLC ("Triana").  (Am. Compl. ¶ 38.)  The paragraph goes on:

> On August 23, 2003, NiSource/CEG sold another subsidiary or affiliated entity, Columbia Energy Resources, LLC ("CNR, LLC") and converted CER to Columbia Energy Resources, LLC ("CER, LLC").  Triana paid $330 million for CER which was a holding company formerly owned by CEG and, in 2003, owned by NiSource.  Triana agreed to continue to fully perform, without additional consideration, the delivery of Gas pursuant to the terms of the Mahonia II forward-sales contracts.  When Triana changed CNR's name to CNR, LLC, NiSource/CEG agreed to indemnify Triana and its subsidiary, CNR, LLC, for liability to royalty owners.

Later, the complaint states, "In August 2003 and thereafter, NiSource and CEG acknowledged their responsibility to pay for all or part of any judgment arising from claims of the type asserted herein even though they had directly or indirectly sold Chesapeake."  (Am. Compl. ¶ 104; *see also* ¶¶ 95-96.)  This agreement is part of the public record, as the *Tawney* decision noted the "agreement by NiSource/CEG to indemnify [Chesapeake's predecessors] from any liability from royalty owners in the case at bar."  *Tawney*, 2007 WL 5539870, at *5.  The *Thacker* court denied the motion to dismiss this very claim, noting that the Restatement (Second) of Contracts, § 308, *Identification of Beneficiaries*, states, "It is not essential to the creation of a right in an intended

---

[14] These allegations distinguish this case from *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 560 (Va. 1998), cited by Defendants (Br. at 16), where each misrepresentation related specifically to a duty or an obligation required by the contract.

beneficiary that he be identified when a contract containing the promise is made."  *Thacker*,

7:07-cv-00026 (E.D. Ky., filed Mar. 31, 2008) (Dkt. No. 25) (attached as Exhibit D to the

Stellings Decl.)  This claim continued through the resolution of that case, as the *Thacker* court

noted this claim in its opinion approving the *Thacker* settlement.  *See* 695 F. Supp. 2d at 525.

This case raises the same allegations against the same defendants as the *Tawney* and *Thacker*

cases did; Count IX should not be dismissed.

I.    **Plaintiff's Civil Conspiracy, Joint Venture, And/Or Alter Ego Claims (Count X) Are Properly Asserted And Pled.**

1.    **The "Intracorporate Conspiracy Doctrine" Is Inapplicable.**

To state a claim for civil conspiracy claim under Virginia law, a party must show:

"(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to

accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff."

*Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (internal quotation omitted).  In

addition, a party must plead the existence of an "underlying alleged wrong."  *Id.* (quoting

*Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44, 50 (1995)).  Plaintiff has alleged

facts that state this claim.  Plaintiff's amended complaint alleges the agreements through which

Plaintiff and the Class were damaged.[15]  (Am. Compl. ¶¶ 33-40.)  First, the agreements among

Defendants unlawfully deprived Plaintiff and the Class of royalties owed to them, through, for

example, the forward sales agreements that set gas prices at below-market rates.  (Am Compl. ¶¶

51-57.)  Plaintiff has also more than sufficiently pled underlying wrongs, alleging that

Defendants committed fraud in their accounting statements sent to Plaintiff and the Class (¶¶ 42-

---

[15] Plaintiff has also more than adequately pled the elements of joint venture.  As set forth above in footnote 11, "A joint venture exists where two or more parties enter into a special combination for the purpose of a specific business undertaking, jointly seeking a profit, gain, or other benefit, without any actual partnership or corporate designation."  *See Roark v. Hicks*, 234 Va. 470, 475,

46), and breached their duties to Plaintiff and the Class arising under the leases, imposed by law, and pursuant to their voluntary undertakings.

Defendants' argument that Plaintiff has pled only that Defendants conspired among themselves as one entity misapprehends Plaintiff's allegations. Although the Amended Complaint contains detailed allegations of the ways in which the Chesapeake predecessors were mere adjuncts of Defendants NiSource and CEG once the merger between CEG and NiSource was consummated (*see* ¶ 40), it also details how NiSource and CEG conspired *before* the merger, when they were separate entities. The agreement and the underlying wrongs that form the civil conspiracy claim began before NiSource and CEG began directing the actions of Chesapeake and its predecessors. Plaintiff's injuries were caused by these pre-merger actions.

First, CEG's CEO discussed a possible "merger" with the CEO of NiSource in early 1999, with a letter from NiSource to CEG's CEO and board of directors offering a purchase following in April 1999. (¶ 34.) CEG then implemented the "golden parachute" deals for its top executives in early to mid-1999, which were funded by the first Mahonia II forward sales contract, which was entered into on December 1999 and which allowed the merger to occur. (¶¶ 35-36.) The merger agreement between NiSource and CEG was then entered into on February 27, 2000. (¶ 36.) This golden parachute arrangement directly injured Plaintiff and the Class, setting the price of the gas on which royalty payments were based at below-market levels (*See* Am. Compl. ¶¶ 34-35.) Defendants are thus incorrect that Plaintiff has pled only that Defendants conspired with their subsidiaries and agents.

### 2. Plaintiff Has Pled Underlying Wrongdoing.

Defendants concede that Plaintiff has sufficiently alleged the first three elements

---

362 S.E.2d 711, 714 (Va. 1987). The Amended Complaint sets forth these allegations. (*See* Am. Compl. ¶¶ 33-40.)

897166.2

of a civil conspiracy claim, asserting only that Plaintiff has not pled an underlying tort or breach of contract.  (*See* Br. at 18.)  For the reasons set forth above, Defendants are incorrect; Plaintiff has asserted numerous wrongs advanced by Defendants' agreement, including breach of contract, breach of fiduciary duty, and fraud.

> **J.**      **Plaintiff's Claims For An Accounting (Count III), A Constructive Or Implied Trust (Count VI), And The Recovery Of Prejudgment Interest As Compensatory Damages (Count XIV) Are Properly Asserted And Pled.**

Defendants make a technical argument that Plaintiff's claims for an accounting (Count III), a constructive or implied trust (Count VI), and prejudgment interest (Count XIV) are improper because they are remedies and not causes of action.  Defendants' argument elevates form over function, because even if Defendants are correct, which they are not, an accounting, constructive trust, and prejudgment interest will all be available if Plaintiff's other claims go forward, so nothing will be gained from dismissing them.

Under "well-settled" Virginia law, "an accounting is available to redress a breach of the fiduciary responsibility inherent in an agency relationship or in [a] special relationship…" *McClung v. Smith*, 870 F. Supp. 1384, 1401 (E.D. Va. 1994) (internal quotation and citation omitted); *Pepper v. Dixie-Splint Coal Co.*, 165 Va. 179, 195, 181 S.E. 406, 412 (Va. 1935) (ordering an accounting for royalties and rents due under coal lease and rejecting statute of limitations defense).  An accounting against a fiduciary is also authorized by statute.  *Id.* at 1400 (citing Va. Code. § 8.01-31).  Similarly, a constructive trust would be created by "operation of law" from a breach of fiduciary duty, *see Greenspan v. Osheroff*, 232 Va. 388, 400, 351 S.E.2d 28, 36 (Va. 1986), as it would from a finding of fraud.  *See Crestar Bank v. Williams*, 250 Va. 198, 204, 462 S.E.2d 333, 335 (Va. 1995).  The award of prejudgment interest to the prevailing party is also expressly contemplated by statute in Virginia.  *See* Va. Code § 8.01-382; *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999).

897166.2

Thus, an accounting, constructive fraud, and prejudgment interest are bound up in Plaintiff's claims, and should not be dismissed if Plaintiff's claims can otherwise proceed.[16]

## VII.   DEFENDANTS' RELIANCE ON ARBITRATION CLAUSES FOUND NOWHERE IN THE AMENDED COMPLAINT IS SPECULATIVE AND SHOULD BE DISREGARDED.

Defendants conclude their brief with a strikingly novel request for dismissal of not only this plaintiff's case, but some countless others similarly situated to her, on the basis of an unauthenticated excerpt of a lease purportedly applying to an absent class member not before the Court.  Not surprisingly, Defendants cite no authority for such an order.  Their references to a purported arbitration agreement outside the pleadings – not even authenticated with a declaration of counsel – is inappropriate and should be disregarded.  Their assertions that the claims of "the majority" of class members (not Ms. Healy) are subject to arbitration are purely speculative, and even if true (which Plaintiff does not concede), are better addressed at the class certification stage.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion be denied in full.

Respectfully submitted,

---

[16] Defendants' cited authority affirms this approach.  (*See* Br. at 19.)  In *Clarke v. Newell*, 2005 U.S. Dist. LEXIS 31053, at *16 (E.D. Va. Nov. 23, 2005), recognized the linkage between other claims for relief and an accounting and constructive trust, noting that while it was dismissing a cause of action for Accounting, Equitable Trust, or Constructive Trust, "to the extent that they are remedies resulting from the causes of action that Plaintiff otherwise affirmatively states in his Complaint, they should remain…"  The Court in Defendants' other cited case agreed with the *Clarke* court, stating, "The court shall recognize [plaintiff's] plea for constructive trust or resulting trust as a remedy but not as a separate cause of action."  *Johnson v. D&D Home Loans Corp.*, 2007 U.S. Dist. LEXIS 90140, at *10-11 (E.D. Va. Dec. 6, 2007).

| | |
|---|---|
| Dated:  October 15, 2010 | **PLAINTIFF, SHARON B. HEALY**<br><br>By:   /s/ David S. Stellings<br><br>David S. Stellings<br>Steven Fineman<br>Jennifer Gross<br>LIEFF, CABRASER, HEIMANN &<br>  BERNSTEIN, LLP<br>250 Hudson Street, 8th Floor<br>New York, NY 10013<br>Telephone: (212) 355-9500<br>Facsimile:  (212) 355-9592<br>dstellings@lchb.com<br>sfineman@lchb.com<br>jgross@lchb.com |
| Peter G. Glubiak, Esq. (VSB 31271)<br>GLUBIAK LAW OFFICE<br>11165 West River Road<br>P.O. Box 144<br>Aylett, VA 23009<br>Telephone: (804) 769-1616<br>Facsimile:  (804) 769-1897<br>glubiaklaw@aol.com | Don Barrett<br>David M. McMullan, Jr.<br>Brian Herrington<br>Katherine B. Riley<br>BARRETT LAW GROUP, P.A.<br>404 Court Square North<br>P.O. Drawer 927<br>Lexington, MS 39095<br>Telephone: (662) 834-2488<br>Facsimile:  (662) 834-2628<br>dbarrett@barrettlawoffice.com<br>dmcmullan@barrettlawoffice.com<br>bherrington@barrettlawgroup.com<br>kbriley@barrettlawoffice.com |
| Larry D. Moffett<br>DANIEL COKER HORTON & BELL, P.A.<br>265 North Lamar Blvd., Suite R<br>P.O. Box 1396<br>Oxford, MS 38655<br>Telephone: (662) 232-8979<br>Facsimile:  (662) 232-8940<br>lmoffett@danielcoker.com | Elizabeth Alexander<br>LIEFF CABRASER HEIMANN &<br>  BERNSTEIN, LLP<br>One Nashville Place<br>150 Fourth Avenue North<br>Suite 1650<br>Nashville, TN 37219<br>Telephone: (615) 313-9000<br>Facsimile:  (615) 313-9965<br>ealexander@lchb.com |

-37-

| | |
|---|---|
| Charles F. Barrett<br>6518 Highway 100, Suite 210<br>Nashville TN 37205<br>Telephone: (615) 515-3393<br>Facsimile:  (615) 515-3395<br>charles@cfbfirm.com | Richard R. Barrett<br>Law Offices of Richard R. Barrett, PLLC<br>1223 Jackson Avenue, Suite 203<br>Oxford, MS 38655<br>Telephone: (662) 307-7000<br>rrb@rrblawfirm.net |
| Thomas Leslie Pruitt<br>PRUITT & CHILDRESS, P.C.<br>Post Office Box 1259<br>Grundy, VA 24614<br>T: 276-935-7900<br>F: 276-935-7905<br>tlpruitt@pnc-law.com | Mary E. McAlister<br>P.O. Box 354<br>Madison, Mississippi 39130<br>Telephone No.: (60l) 506-9125<br>mcalister_m@bellsouth.net |

897166.2

<u>CERTIFICATE OF SERVICE</u>

The undersigned counsel does hereby certify that he has this day served a true and correct

copy of the above and foregoing upon all counsel of record via ECF notification:

> Jonathan Todd Blank, Esq.
> Catherine Paige Bobick, Esq.
> MCGUIRE WOODS LLP
> Post Office Box 1288
> Charlottesville, VA 22902-1288
> jblank@mcguirewoods.com
> pbobick@mcguirewoods.com
>
> Yvette Harmon, Esq.
> MCGUIRE WOODS LLP – NEW YORK
> 7th Floor
> 1345 Avenue of the Americas
> New York, New York 10501
> yharmon@mcguirewoods.com
>
> James W. Draughn, Jr. (VSB #33205)
> Daniel T. Donovan
> Kirkland & Ellis, LLP
> 655 15th Street, N.W., Ste 1200
> Washington DC 20005-5793
> james.draughn@kirkland.com
> daniel.donovan@kirkland.com
>
> Daniel R. Bieger, Esq. (VSB #18456)
> Copeland & Bieger, P.C.
> P.O. Box 1296
> Abingdon, VA 24212
> mail@copelandbieger.com

This the 15th day of October, 2010.

> */s/ Daniel E. Seltz*
> Daniel E. Seltz
> Attorney for Plaintiff

-39-